ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

☆FILED☆

2015 JUN 30  PM 8: 04

CLERK
U.S. DISTRICT COURT
E.D.N.Y.

Marvin Lovell

**AMENDED**
**COMPLAINT**

Plaintiff,

14 CV-7592 (CBA)

-against-

**JURY TRIAL DEMANDED**

Consolidated Edison Company of New York

Defendants.
-------------------------------------------------------X

1. At all times, hereinafter mentioned, plaintiff was and still is a resident of 644
   Westminster Road, Baldwin, NY 11510.

2. Defendant, Consolidated Company of New York, Inc. ("Con Edison") is a corporation
   incorporated under the laws of New York County and having a main office at 4 Irving
   Place, New York, NY 10003, and in licensed to do business in New York.

3. The jurisdiction of this court is invoked pursuant to Title VII of the Civil Rights Act of
   1964, 42 U.S.C §§ 2000 et seq., 38 U.S.C § 4311(a), NYSHRL §296 et. Seq., including
   §296 as amended, (State Human Rights Law" or "State HRL), Article 1, Section 8 of the
   New York City Administrative Code, § 8-101, et. Seq., ("City HRL").

4. The reason behind the tolling of the 90-day period following receipt of the EEOC right-
   to-sue letter was the fact that I sought legal assistance from the law firm of Imbesi
   Christensen who I believed was assisting me in the best way possible. I did submit my
   right-to-sue letter attached to the summons and complaint filed on my behalf by Imbesi
   Christensen law firm, and the 90-day period **was not** missed, but the summons and
   complaint was filed with the Supreme Court of the State of New York on December 14,

2012. However, the case was immediately dismissed due to the order that was granted to dismiss the case. Please see the attached exhibits.

5. Also, I appealed the case, which was filed with the New York County clerk on 10/3/2013, which I received an extension to file as well and ultimately decided to file with the United States District Court, Eastern District of New York.

6. Therefore, I am respectfully asking the court to receive this case so that I will be afforded the right to a jury trial regarding an employment discrimination case that still brings torment to me when I think about what I suffered and endured even to this present day.

7. Rather than restate my original complaint that was captured in the original summons and complaint, I have attached a copy of the facts to state a claim to relief that is plausible on its face (Bell Atlantic Corp.v. Twombly, 550 U.S. 544, 570 (2007).

8. Additionally, I am an African-American and am a "black male" and suffered disparate treatment at Consolidated Edison Company of New York, Inc. **(please see the attached copy of the summons/complaint filed with the Supreme Court of the State of New York).**

9. Wherefore, plaintiff demands: Compensatory damages, economic damages (back pay and compensation for lost benefits, plus prejudgment interest, damages (front pay) and such relief as the court deems just and proper.

Date: 6/30/15

Marvin Lovell
644 Westminster Rd
516-868-0672

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

*MARVIN LOVELL*

_____

_____

_____

NAME OF PLAINTIFF(S)

*CONSOLIDATED EDISON*
*COMPANY OF NEW YORK,*
*INC.*

NAME OF DEFENDANT(S)

*AMENDED*
**COMPLAINT**

*14 CV- 7592 (CCBA)*
*JURY TRIAL DEMANDED*

This action is brought for discrimination in employment pursuant to (check only those that apply):

✓     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE:** *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

_____     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592 , the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

_____     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

-1-

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343.  Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

1.    Plaintiff resides at:

644 Westminster Road, Baldwin
Street Address

Nassau , NY , 11570 , 347-592-3113
County     State      Zip Code   Telephone Number

2.    Defendant(s) resides at, or its business is located at:

4 Irving Place
Street Address

New York     New York NY , 10003
County     City     State     Zip Code

3.    The address at which I sought employment or was employed by the defendant(s) is:

4 Irving Place
Street Address

New York     New York NY , 10003
County     City     State     Zip Code

4.      The discriminatory conduct of which I complain in this action includes
        *(check only those that apply).*

                                         Failure to hire.

                                         Termination of my employment.

   ✓   Failure to promote.

                                          Failure to accommodate my disability.

   ✓   Unequal terms and conditions of my employment.

   ✓   Retaliation

                                          Other acts *(specify)*: _____.

**NOTE:**      *Only those grounds raised in the charge filed with the Equal Employment
               Opportunity Commission can be considered by the federal district court.*

5.      It is my best recollection that the alleged discriminatory acts occurred on:
        _____ 3/16/12 _____.
        Date(s)

6.      I believe that the defendant(s) *(check one)*

           ✓   is still committing these acts against me.

        _____ is <u>not</u> still committing these acts against me.

7.      Defendant(s) discriminated against me based on my:
        *(check only those that apply and state the basis for discrimination, for example,
        what is your religion, if religious discrimination is alleged)*

        [✓]  race _____     [✓]  color  black _____

        [ ]  gender/sex _____     [ ]  religion _____

        [ ]  national origin _____

        [ ]  disability _____

        [ ]  age.  If age is checked, answer the following:

             I was born in _____.  At the time(s) defendant(s) discriminated against me,
                            Year
             I was [ ] <u>more</u>  [ ] <u>less</u> than 40 years old.  *(check one).*

NOTE:    *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

8.    The facts of my case are as follows:

*please see attached...*

_____

_____

_____

_____

_____

_____

_____

_____

*(Attach additional sheets as necessary)*

NOTE:    *As additional support for your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.*

9.    It is my best recollection that I filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights regarding defendant's alleged discriminatory conduct on:    3/20/2012 .
                                                                                          Date

10.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: 3/20/2012
                                                                                          Date

-4-

**Only litigants alleging age discrimination must answer Question #11.**

11.    Since filing my charge of age discrimination with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____    60 days or more have elapsed.

_____    less than 60 days have elapsed.

12.    The Equal Employment Opportunity Commission *(check one)*:

_____    has <u>not</u> issued a Right to Sue letter.

✓    has issued a Right to Sue letter, which I
**received** on ___9/19/12___.
Date

**NOTE:**    Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity
Commission to this complaint.

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,
including injunctive orders, damages, pre-judgment interest, costs, and attorney's fees.

*Marwin Lovell*
PLAINTIFF'S SIGNATURE

Dated: ___6/30/15___

___644 Westminster Rd___
Address
___Baldwin, NY 11510___
___(347)592-3113___
Phone Number

rev. 4/23/13

ComplaintUnderTitleVII,ADAorADEAEDNY.rev.4/23/13
-5-

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 1 1 2015 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MARVIN LOVELL,

                 Plaintiff,

    -against-

CONSOLIDATED EDISON OF NEW YORK,
INC.,

              Defendant.
--------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
14-CV-7592 (CBA)

**AMON, Chief United States District Judge:**

Plaintiff Marvin Lovell brings the instant pro se action pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000 et seq. He has filed an application to proceed in forma

pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). For the reasons set forth below, Lovell's

application for IFP status is denied. If Lovell elects to pursue this action, he is directed to: (1)

pay the filing fee of $400 within fourteen (14) days of the date of this Order; and (2) file an

amended complaint within thirty (30) days of the date of this Order.

## BACKGROUND

Lovell alleges that he was discriminated against by his employer, Consolidated Edison of

New York, Inc. ("Con Edison"). Specifically, Lovell alleges that "Paul Olmsted, Section

Manager of Meter Operations and Consolidated Edison" discriminated against him on March 16,

2012, and retaliated against him, "due to religion, military status, and . . . race." (Compl. ¶ 8.)

On the form complaint, Lovell indicates he is Christian, but has not indicated his race. (Id. ¶ 7.)

According to Lovell, Con Edison is still committing these acts of discrimination and retaliation

against him. (Id. ¶ 6.) In a letter attached to his complaint, Lovell indicates that he filed a

complaint with the New York State Department of Human Rights ("SDHR"), and dual-filed with

the Equal Employment Opportunity Commission ("EEOC"). (Compl. at 6.) Lovell further

indicates that he filed a case in New York state court, which was dismissed.  (Id.)  He did not

appeal that decision.  (Id.)  According to Lovell, the EEOC issued a Right to Sue letter that he

received on September 19, 2012.  (Compl. ¶ 12.)

## DISCUSSION

### I.  Request to Proceed IFP

The IFP statute allows for the "commencement . . . of any suit . . . without prepayment of

fees" if the litigant submits an affidavit demonstrating that he "is unable to pay such fees or give

security therefor." 28 U.S.C. § 1915(a)(1).  "The purpose of the statute permitting litigants to

proceed IFP is to insure that indigent persons have equal access to the judicial system." Pinede

v. New York City Dep't of Envtl. Prot., No. 12-CV-6344(CBA), 2013 WL 1410380, at *2

(E.D.N.Y. Apr. 8, 2013); see also Glass v. Comm'r of Soc. Sec., No. 13-CV-4026(ENV), 2013

WL 3938740, at *1 (E.D.N.Y. July 30, 2013) (citing Davis v. New York City Dep't of Educ.,

No. 10-CV-3812(KAM), 2010 WL 3419671, at *1 (E.D.N.Y. Aug. 27, 2010)).  Section 1915

authorizes a court to dismiss a case brought by a plaintiff requesting to proceed IFP if the

"allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A).  A district court has discretion to

decide whether a plaintiff qualifies for IFP status. Pinede, 2013 WL 1410380, at *2; see also

DiGianni v. Pearson Educ., No. 10-CV-0206(RJD)(LB), 2010 WL 1741373, at *1 (E.D.N.Y.

Apr. 30, 2010) (citing Maccaro v. New York City Health & Hosp. Corp., No. 07-CV-

1413(ENV)(LB), 2007 WL 1101112, at *1 (E.D.N.Y. Apr. 11, 2007)).

Here, the financial declaration form that Lovell has submitted does not satisfy the Court

that he is unable to pay the Court's filing fee to commence this action.  Lovell states that he is

currently employed by National Grid and earns $4,800.00 monthly in net pay.  (Appl. To

Proceed in District Court Without Prepaying Fees or Costs ("IFP Appl.") ¶ 2.)  He also receives

$1,300.00 per month in rental income, and $258.00 per month in disability payments. (Id. ¶ 3.) Further, Lovell has $1,309.02 in a checking or savings account. (Id. ¶ 4.) Lovell's regular monthly expenses total approximately $5,800: he pays $3,173.00 per month for a mortgage, approximately $250.00 a month for electricity, approximately $75.00 a month for gas, approximately $50.00 a month for water, $1,005.00 a month for car payments, $409.00 a month for insurance, $130.00 a month for cable service, $274.00 a month for heating oil, $140.00 a month for cell phone service, and $100.00 a month for transportation costs. (Id. ¶ 6.) Lovell further states that he pays $220.00 monthly to support two individuals and has various medical expenses. (Id. ¶¶ 7, 8.) By his own account, Lovell would still have approximately $550 of his monthly income and $1,309.02 in his savings account after paying each of these monthly expenses. Based on Lovell's IFP application, the Court finds that he has sufficient resources to pay the $400 filing fee to commence this action and his request to proceed IFP is therefore denied. See, e.g., DiGianni, 2010 WL 1741373, at *1 (denying plaintiff's request to proceed IFP based on his declaration that he earned $1,920.00 per month, had $300.00 in a checking account, and had various monthly expenses). In order to proceed further, Lovell must pay the $400 filing fee within fourteen (14) days of the date of this Order.

## II.   Title VII Claims

If Lovell elects to pay the $400 filing fee, the Court advises him that his Title VII claims appear to be untimely, and also fail to state a plausible claim for discrimination or retaliation.

### A.   Timeliness

"In order to successfully pursue a Title VII claim in federal court, a plaintiff must file h[is] federal complaint within 90 days of receipt of h[is] Right-to-Sue notice from the EEOC." Grys v. ERIndustrial Sales, Inc., 553 F. App'x 61, 62 (2d Cir. 2014) (citing 42 U.S.C. § 2000e-

3

5(f)(1)). This 90-day period, however, may be equitably tolled in certain circumstances. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982).

Here, Lovell alleges that the EEOC issued a Right to Sue letter which he received on September 19, 2012. (Compl. ¶ 12.) He did not file the instant action until over two years later, on December 31, 2014. Accordingly, based on the allegation in his complaint as to when he received the EEOC Right to Sue letter, the instant complaint is untimely. If Lovell decides to pay the filing fee and further pursue this litigation, he must include in the amended complaint any grounds he has to support the tolling of the 90-day limitations period. See Gonzales v. Legend Hospitality, No. 14-CV-6478(DLI), 2014 WL 5772176, at *3 (E.D.N.Y. Nov. 5, 2014) ("If [plaintiff] elects to file an amended complaint, she must submit any grounds she has for tolling the 90-day period following the receipt of the EEOC right-to-sue letter"); Gallop-Laverpool v. Brooklyn Queens Nursing Home, No. 14-CV-2880(JG), 2014 WL 3897641, at *3 (E.D.N.Y. Aug. 8, 2014) (advising pro se plaintiff that if she "failed to file the instant action within 90 days of the receipt of the right-to-sue letter, she must submit facts to support equitable tolling of the limitations period, that is, facts that, in fairness, excuse her failure to file the lawsuit on a timely basis."). If possible, Lovell should also attach the EEOC Right to Sue letter to any amended complaint he files with this Court in order to confirm the date on which the letter was issued.

B. Sufficiency of the Pleadings

Even assuming Lovell's Title VII claims are not time-barred, as currently pleaded the complaint fails to state a claim under Title VII. In order to avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550

U.S. at 556). Although "detailed factual allegations" are not required, "[a] pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do." Id. (quoting Twombly, 550 U.S. at 555). Further, a complaint is insufficient to state a

claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting

Twombly, 550 U.S. at 557). Moreover, the submissions of a pro se litigant "must be construed

liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed.

Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations

omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after Twombly . . . we

remain obligated to construe a pro se complaint liberally." (citing Erickson v. Pardus, 551 U.S.

89 (2007))).

     Lovell asserts a claim under Title VII, which prohibits discrimination on the basis of an

"individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To

establish a prima facie case of discrimination, a plaintiff must show that: (1) he is a member of a

protected class, (2) he was qualified for the position he held, (3) he suffered an adverse

employment action, and (4) the adverse employment action occurred under circumstances giving

rise to an inference of discrimination. Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir.

2012) (internal quotation marks and citation omitted). Although a plaintiff is not required to

plead facts to show a prima facie case of discrimination, Swierkiewicz v. Sorema N.A., 534 U.S.

506, 511-12 (2002), "dismissal is nevertheless appropriate where the plaintiff 'fail[s] to allege

even the basic elements of a discriminatory action claim,'" Maldonado v. George Weston

Bakeries, 441 F. App'x 808, 809 (2d Cir. 2011) (quoting Patane v. Clark, 508 F.3d 106, 112 &
n.3 (2d Cir. 2007)).

As an initial matter, although Lovell has indicated his religion, he has failed to indicate
his race.  Further, Lovell's complaint contains only the conclusory allegation that he was
discriminated against "due to religion . . . and additionally [his] race."  (Compl. ¶ 8.)  He does
not provide any facts supporting this allegation.  See Jackson v. Cnty. of Rockland, 450 F. App'x
15, 19 (2d Cir. 2011) (finding plaintiff failed to state plausible discrimination claim based on
"bald assertions of discrimination and retaliation, unsupported by any comments, actions, or
examples . . . from which [the court] could infer that the defendants possessed a discriminatory
or retaliatory motive.").  Lovell has also failed to identify what adverse employment actions were
taken against him.  These allegations are therefore insufficient to state a claim for discrimination.

Lovell further alleges that he was retaliated against due to his religion and his race.
(Compl. ¶ 8.)  In order to establish a claim for retaliation, a plaintiff must show that "(1) []he
engaged in protected activity; (2) the employer was aware of that activity; (3) the employee
suffered a materially adverse action; and (4) there was a causal connection between the protected
activity and that adverse action."  Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,
716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks and citation omitted).  Here, again,
Lovell makes only bald assertions that he was retaliated against, without providing any factual
allegations indicating that there was a causal connection between a protected activity and the
adverse action.  Indeed, he has not alleged that he engaged in any protected activity.  See Chan v.
Donahoe, No. 13-CV-2599(JBW), 2014 WL 6844943, at *20 (E.D.N.Y. Dec. 4, 2014) ("The
term 'protected activity' refers to action taken to protest or oppose statutorily prohibited

discrimination." (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000))).

Accordingly, his complaint fails to state a claim for retaliation.

## III.   Claims Based on Military Status

Lovell also alleges that he was discriminated and retaliated against on the basis of his

military status.  Although military status is not one of the protected grounds under Title VII, in

light of Lovell's pro se status the Court will construe this portion of his complaint as alleging

claims under the Uniformed Services Employment and Reemployment Rights Act

("USERRA")—which is "very similar to Title VII," Staub v. Proctor Hosp., 131 S. Ct. 1186,

1191 (2011)—and the New York State Human Rights Law ("NYSHRL").  As with his claims

under Title VII, Lovell's complaint as currently pleaded fails to state a claim for relief under

these statutes because he makes only "'naked assertion[s]' devoid of 'further factual

enhancement.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 557 (2007)).

### A.   USERRA Claims

USERRA's anti-discrimination provision states that "[a] person who is a member of . . . a

uniformed service shall not be denied initial employment, reemployment, retention in

employment, promotion, or any benefit of employment by any employer on the basis of that

membership." 38 U.S.C. § 4311(a).  "An employer engages in a prohibited act under USERRA

'if the person's membership . . . in the uniformed services is a motivating factor in the

employer's action, unless the employer can prove that the action would have been taken in the

absence of such membership.'"  Lapaix v. City of New York, No. 13-CV-7306(LGS), 2014 WL

3950905, at *5 (S.D.N.Y. Aug. 12, 2014) (quoting 38 U.S.C. § 4311(c)(1)).  "Discriminatory

motivation may be proven through direct or circumstantial evidence, including . . . an employer's

expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." Lapaix, 2014 WL 3950905, at *5 (quoting Woodard v. New York Health & Hosps. Corp., 554 F. Supp. 2d 329, 348-49 (E.D.N.Y. 2008)).

Here, Lovell's complaint contains only the conclusory allegation that he was discriminated against due to his "military status." (Compl. ¶ 8.) He does not provide any details about his military status, nor does he indicate what employment actions were taken against him. Further, he has failed to plead any facts that give rise to a plausible claim of discriminatory motivation. His complaint therefore fails to state a discrimination claim under USERRA.

Lovell's retaliation claim under USERRA similarly fails. "In order to make out a prima facie case of retaliation under USERRA, 'a plaintiff must show that (1) he was engaged in protected activity; (2) that the employer was aware of that activity; (3) that the plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action.'" Lapaix, 2014 WL 3950905, at *6 (quoting Fink v. City of New York, 129 F. Supp. 2d 511, 527 (E.D.N.Y. 2001)). As with his Title VII retaliation claim, Lovell has failed to allege that he engaged in any protected activity—such as making complaints about any perceived discrimination based on his military status. Moreover, he has failed to include any factual allegations related to the retaliatory conduct. A conclusory allegation that he was "retaliated against" due to his "military status" is insufficient to state a plausible retaliation claim.

### B. NYSHRL Claims

Section 296 of the NYSHRL prohibits employers from discriminating against an individual "because of . . . [his] military status." N.Y. Exec. Law § 296(1)(a). Lovell's

complaint fails to state a claim for military status discrimination under the NYSHRL for the same reasons discussed above with respect to his USERRA claims. See Lapaix, 2014 WL 3950905, at *6 (employing same analysis for NYSHRL and USERRA military status discrimination claims).

The Court further notes that, to the extent Lovell does in fact seek to assert a claim under the NYSHRL, these claims may be barred by the election of remedies provisions contained in those statutes. Specifically, "NYHRL . . . claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." York v. Ass'n of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002); see N.Y. Exec. Law § 297(9). "A plaintiff's election of remedies generally 'deprives the Court of subject matter jurisdiction over the state law claim of discrimination.'" Pinede v. New York City Dep't of Envtl. Prot., No. 12-CV-6344(CBA), 2013 WL 1410380, at *6 (E.D.N.Y. Apr. 8, 2013) (quoting Smith-Henze v. Edwin Gould Servs. For Children & Families, No. 06-CV-3049(LBS)(DCS), 2006 WL 3771092, at *3 (S.D.N.Y. Dec. 21, 2006)).

In Lovell's complaint, he indicates that he initially filed a complaint with the SDHR and subsequently filed an action in New York State Supreme Court, which was dismissed. (Compl. at 6.) However, he provides no information regarding the claims he raised before the SDHR or the grounds on which the SDHR dismissed his complaint. If Lovell decides to pay the filing fee and seeks to assert claims under the NYSHRL, he must state so explicitly and provide information about his complaint before the SDHR.[1] If possible, he should attach the SDHR complaint and the state court complaint, as well as corresponding decisions, to any amended complaint he files in this Court.

---

[1] This also applies to any claims Lovell attempts to assert under the NYSHRL based on his race or religion.

## CONCLUSION

For the reasons set forth above, Lovell's request to proceed in forma pauperis is denied. If Lovell elects to pursue this action, he must pay the $400 filing fee within fourteen (14) days of the date of this Order. In light of Lovell's pro se status, if he pays the filing fee within the time allowed, he is granted thirty (30) days leave from the date of this Order to file an amended complaint to address the deficiencies discussed above. He is advised that the amended complaint will completely replace the original complaint, and must be captioned "Amended Complaint" and bear the docket number 14-CV-7592(CBA). The Clerk of Court is directed to forward an employment discrimination form complaint to plaintiff with this Order.

No summons shall issue at this time and all further proceedings shall be stayed for fourteen (14) days or until Lovell has complied with this Order. If Lovell fails to pay the filing fee within the time allowed, the complaint will be dismissed without prejudice. Further, if Lovell pays the $400 filing fee but fails to file an amended complaint within thirty (30) days of the date of this Order, the instant action shall be dismissed without prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: May 11, 2015
         Brooklyn, New York

                                        _Carol Bagley Amon_
                                        Carol Bagley Amon
                                        Chief United States District Judge

EXHIBIT A



NEW YORK STATE
# DIVISION OF HUMAN RIGHTS
55 HANSON PLACE, ROOM 1084
BROOKLYN, NEW YORK 11217

(718) 722-2856
Fax: (718) 722-2869
www.dhr.ny.gov

ANDREW M. CUOMO
GOVERNOR

GALEN D. KIRKLAND
COMMISSIONER

April 6, 2012

Marvin Franklin Lovell
644 Westminister Road
Baldwin, NY 11510

Re:   Marvin Franklin Lovell v. Consolidated Edison Company of New York, Inc.
Case No. 10154304

Dear Marvin Franklin Lovell:

Please be advised that this office has received your complaint. Your filing date is 3/20/2012.

A copy of your complaint, and the determination, will be sent to the U.S. Equal Employment Opportunity Commission (EEOC), so that your complaint may be dual-filed under applicable federal law. Your EEOC charge number is 16GB202443.

To protect your rights, it is essential that the Division be notified promptly of any change in your address or telephone number. A form is enclosed for this purpose.

You will be contacted by the Human Rights Specialist assigned to your case when the active investigation of your complaint begins. In the meantime, if you have any questions please call our office at (718) 722-2856.

Very truly yours,

Leon C. Dimaya
Regional Director



**ANDREW M. CUOMO**
GOVERNOR

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>MARVIN FRANKLIN LOVELL,<br><br>Complainant,<br><br>v.<br><br>CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,<br><br>Respondent. | **VERIFIED COMPLAINT**<br>Pursuant to Executive Law,<br>Article 15<br><br>Case No.<br>**10154304** |

Federal Charge No. 16GB202443

I, Marvin Franklin Lovell, residing at 644 Westminister Road, Baldwin, NY, 11510, charge the above named respondent, whose address is 4 Irving Place, Rm 720, New York, NY, 10003 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of creed, military status, opposed discrimination/retaliation.

Date most recent or continuing discrimination took place is 3/16/2012.

The allegations are:


SEE ATTACHED COMPLAINT FORM



# New York State Division of Human Rights
## Complaint Form



RECEIVED

MAR 2 0 2012

HEMPSTEAD REGIONAL OFFICE

## CONTACT INFORMATION

**My contact information:**

Name: MARVIN LOVELL

Address: 644 Westminster Rd    Apt or Floor #:_____

City: Baldwin    State: NY    Zip: 11510

## REGULATED AREAS

**I believe I was discriminated against in the area of:**

☒ Employment          ☐ Education                ☐ Volunteer firefighting

☐ Apprentice Training  ☐ Boycotting/Blacklisting  ☐ Credit

☐ Public Accommodations  ☐ Housing               ☐ Labor Union, Employment
*(Restaurants, stores, hotels, movie*                              Agencies
*theaters amusement parks, etc.)*  ☐ Commercial Space

**I am filing a complaint against:**

Company or Other Name: Consolidated Edison of New York, Inc

Address: 4 Irving Place

City: New York    State: NY    Zip: 10003

Telephone Number: 212  460  4600
(area code)

**Individual people who discriminated against me:**

Name: Paul Olmsted      Name: Joanna Wolff
Title: Section Manager   Title: General Manager

## DATE OF DISCRIMINATION

**The most recent act of discrimination happened on:** 03 month  16 day  2012 year

3

# DOMESTIC WORKERS



*Please answer the questions on this page **only if you are a domestic worker**. If you are not a domestic worker, please skip this page and turn to the next page.*

> **The Human Rights Law protects you if you are being sexually harassed or harassed because of your gender, race, national origin, or religion AND you are employed in the home or residence of another person for the purposes of housekeeping, childcare, companionship, or any other domestic service purpose**

**Do you live in your employer's home?**   ☐ Yes   ☐ No

> *If yes, please be sure to fill out the information on Page 11 and provide the name of another person who does not live with you but will know how to contact you if the Division needs to reach you.*

**What did the person you are complaining against do?**
*Please check all that apply.*

☐ Harassed me because of my race or color     ☐ Harassed me because of my national origin

☐ Harassed me because of my religion     ☐ Harassed me because of my gender/sex

☐ Sexually harassed me

**Other protections for Domestic Workers:**

As a domestic Worker, you are also entitled to certain protections in the following areas:

- **Minimum Wage** (the lowest hourly wage under the law)
- **Day of Rest** (the amount of time off that you should have each week)
- **Paid Vacation** (the amount of time off that you should have each year)
- **Overtime Pay** (extra money that you receive for working extra hours)
- **Disability Benefits** (payments if you can't work because of illness or injuries)

If you have questions about these topics, please contact:

**New York State Department of Labor**
(518) 457-9000
(888) 4-NYSDOL / (888-469-7365)
TTY/TDD (800) 662-1220
www.labor.ny.gov



When you have finished answering these questions, please turn to Page 8.

4

## BASIS OF DISCRIMINATION

*Please tell us why you were discriminated against by checking one or more of the boxes below.*

 You do not need to provide information for every type of discrimination on this list. Before you check a box, make sure you are checking it only if you believe it was a reason for the discrimination. Please look at the list on Page 1 for an explanation of each type of discrimination.

**Please note**: Some types of discrimination on this list do not apply to all of the regulated areas listed on Page 3. (For example, Conviction Record applies only to Employment and Credit complaints, and Familial Status is a basis only in Housing and Credit complaints). These exceptions are listed next to the types of discrimination below.

## I believe I was discriminated against because of my:

| | |
|---|---|
| ☐ **Age** *(Does not apply to Public Accommodations)* <br> Date of Birth: | ☐ **Genetic Predisposition** *(Employment only)* <br> Please specify: |
| ☐ **Arrest Record** *(Only for Employment, Licensing, and Credit)* <br> Please specify: | ☐ **Marital Status** <br> Please specify: |
| ☐ **Conviction Record** *(Employment and Credit only)* <br> Please specify: | ☒ **Military Status:** <br> Please specify: <br> veteran |
| ☒ **Creed / Religion** *Christian* <br> Please specify: <br> Wanted freedom of profanity | ☐ **National Origin** <br> Please specify: |
| ☐ **Disability** <br> Please specify: | ☐ **Race/Color or Ethnicity** <br> Please specify: |
| ☐ **Domestic Violence Victim Status:** <br> *(Employment only)* <br> Please specify: | ☐ **Sex** <br> Please specify: ☐ **Female** ☐ **Male** <br> ☐ **Pregnancy** <br> ☐ **Sexual Harassment** |
| ☐ **Familial Status** *(Housing and Credit only)* <br> Please specify: | ☐ **Sexual Orientation** <br> Please specify: |

☒ **Retaliation** *(if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above)*
Please specify: internal complaint to E.E.O

 Before you turn to the next page, please check this list to make sure that you provided information **only** for the type of discrimination that relates to your complaint.

# EMPLOYMENT DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of employment. If not, turn to the next page.*

**How many employees does this company have?**
a) 1-3       b) 4-14       c) 15 or more       d) 20 or more       e) Don't know

**Are you currently working for the company?**

☐ Yes

Date of hire: (_____  _____  _____)    What is your job title? _____
                      Month      day     year

☒ No

Last day of work: ( 03   16   2012 )    What was your job title? *Customer Operations Supervisor*
                   Month    day    year

☐ I was not hired by the company

Date of application: (_____  _____  _____)
                         Month    day    year

## *ACTS OF DISCRIMINATION*

**What did the person/company you are complaining against do? Please check all that apply.**

☐ Refused to hire me

☐ Fired me / laid me off

☐ Did not call me back after a lay-off

☐ Demoted me

☐ Suspended me

☐ Sexually harassed me

☒ Harassed or intimidated me (other than sexual harassment)

☐ Denied me training

☐ Denied me a promotion or pay raise

☐ Denied me leave time or other benefits

☐ Paid me a lower salary than other workers in my same title

☐ Gave me different or worse job duties than other workers in my same title

☐ Denied me an accommodation for my disability

☐ Denied me an accommodation for my religious practices

☒ Gave me a disciplinary notice or negative performance evaluation

☐ Other: _____

**DESCRIPTION OF DISCRIMINATION** - for <u>all complaints</u> *(Public Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)*

*Please tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory.* **PLEASE TYPE OR PRINT CLEARLY.**



Unfortunately I had to come to the conclusion of involuntary resignation from the Company of Consolidated Edison of New York due to hostile working environments over the length of three(3) years and seven months. On March 16, 2012, Paul Olmsted, Section Manager of Brooklyn Meter Operations not only harassed me by asking me do I want to resign now, but retaliated against me because of an EEO internal complaint made on August 4th of 2011 against management (Ralph Pica-retired Section Manager, Joanna Wolff) on the charges of discrimination based on military status (which was closed last year-found unsubstantiated). Additionally, Mr. Olmsted gave me a negative performance evaluation on the same day. Moreover, Mr. Olmsted did not respect my religion (Christian) and would oftentimes use profanity when speaking with me or concerning other individuals. Due to my military background, I was always seen as a more strict individual than my peers.

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form.* **PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.**

8

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing),as applicable. This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.

_Sign your full legal name_

Subscribed and sworn before me
This 28th day of March, 20 12

_Signature of Notary Public_

County:                                    Commission expires:

John Peter Plagianos
Notary Public State of New York
Qualified in Queens County
No. 02PL6201733
Commission Expires 03-02-2013

**Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.**

9

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Marvin F. Lovell<br>644 Westminister Road<br>Baldwin, NY 11510 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2012-02443** | **Holly M. Woodyard,**<br>**Investigator** | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Kevin J. Berry_                                    September 19, 2012

**Kevin J. Berry,**                                    (Date Mailed)
**District Director**

Enclosures(s)

cc:

**CONSOLIDATED EDISON COMPANY OF NY**
**Attn: Director of Human Resources**
**JAF Station, P.O. Box 1762**
**New York, NY 10116**

## FACTS ABOUT FILING
## AN EMPLOYMENT DISCRIMINATION SUIT
## IN FEDERAL COURT IN NEW YORK STATE

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a private lawsuit.

### WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. New York State has four federal districts:

* The United States District Court for the Southern District of New York is located at 500 Pearl Street in Manhattan. It covers the counties of Bronx, Dutchess, New York (Manhattan), Orange, Putnam, Rockland, Sullivan, and Westchester. (212) 805-0136 http://www.nysd.uscourts.gov

* The United States District Court for the Eastern District of New York is located at 225 Cadman Plaza in Brooklyn and covers the counties of Kings (Brooklyn), Nassau, Queens, Richmond (Staten Island), and Suffolk. (718) 613-2600 http://www.nyed.uscourts.gov

* The United States District Court for the Western District of New York is located at 68 Court Street in Buffalo. It covers the counties of Allegheny, Cattaraugus, Chautauqua, Chemung, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Schuyler, Seneca, Steuben, Wayne, Wyoming, and Yates. (716) 551-4211 http://www.nywd.uscourts.gov

* The United States District Court for the Northern District of New York is located at 100 South Clinton Street in Syracuse and covers the counties of Albany, Broome, Cayuga, Chanango, Clinton, Columbia, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Montgomery, Oneida, Onandaga, Oswego, Otsego, Rensselaer, St. Lawrence, Saratoga, Schenectady, Schoharie, Tioga, Tompkins, Ulster, Warren, and Washington. This District Court's pro Se Attorney has offices at 10 Broad Street in Utica New York. (315) 234-8500 http://www.nynd.uscourts.gov

### WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit must be filed in U.S. District Court within 90 days of the date you receive the enclosed final action. Once this 90 day period is over, unless you have filed suit, you will have lost your right to sue.

(Over)

EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
MARVIN LOVELL,

                       **Plaintiff,**

            -against-

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,

                       **Defendant.**

-------------------------------------------------------------------X

Index No.:

SUMMONS

Plaintiff designates New York
County as the place of trial.

The basis of venue is:
DEFENDANT'S PLACE OF
BUSINESS

Defendant's principal place of
business is:
4 Irving Place
New York, New York 10003

To the above named Defendant(s):

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this Summons, to serve a notice of appearance, on the plaintiff's attorney within 20 days after service of this Summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint. The basis of the venue is the Plaintiff's residence.

Dated: New York, New York
      December 14, 2012

*Vincent Imbesi*

Vincent Imbesi, Esq.
IMBESI CHRISTENSEN
450 Seventh Avenue, Suite 3002
New York, NY 10123

TO:    CONSOLIDATED EDISON COMPANY OF
        NEW YORK, INC.
        4 Irving Place
        New York, NY 10003

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

MARVIN LOVELL,                                                          Index No.:

                       Plaintiff,                         **COMPLAINT AND JURY**
                                                  **DEMAND**

              -against-

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,

                       Defendant(s).

-------------------------------------------------------------------X

       Plaintiff, by and through his attorneys, IMBESI CHRISTENSEN, complaining of the

Defendant, respectfully alleges, upon information and belief:

## INTRODUCTION

1. Plaintiff, Marvin Lovell, brings this action, by his attorneys, Imbesi Christensen, against

    Defendant Consolidated Edison Company of New York, Inc. (hereinafter "Defendant" or

    "Con Ed"), for racial discrimination, creation of a hostile work environment and unlawful

    policies and practices engaged in by Defendant against Mr. Lovell.

2. Mr. Lovell, a former Con Ed employee, seeks damages and other appropriate relief for

    violations of his statutory, civil and human rights under Article 15 of the Executive Laws

    of the State of New York, §290 *et. seq.*, including §296 as amended, ("State Human

    Rights Law" or "State HRL"), and Article 1, Section 8 of the New York City

    Administrative Code, § 8-101, *et. seq.,* ("City HRL").

**JURISDICTION AND VENUE**

3. This Court has personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 301 because Con Ed is a domestic business corporation with its principal place of business located at 4 Irving Place, New York, NY 10003.

4. Venue is proper in the Supreme Court of the State of New York, New York County, pursuant to N.Y. C.P.L.R. §503(a) because Defendant's principal place of business is located in New York County.

**THE PARTIES**

5. Plaintiff Marvin Lovell is an individual domiciled in and a citizen of the State of New York.

6. Defendant Con Ed is a domestic business corporation, authorized to conduct business in the State of New York, with its principal place of business located at 4 Irving Place, New York, NY 10003.

7. Defendant Con Ed is an "employer" as defined in the applicable New York State and New York City statutory provisions.

8. Mr. Lovell is an "employee" as defined in the applicable New York State and New York City statutory provisions.

**STATEMENT OF FACTS**

9. On Aril 2, 2001, Mr. Lovell began working for Con Ed as a Customer Field Representative for the New York City region.

10. On September 17, 2002, Mr. Lovell received a military leave of absence and left his employment at Con Ed to enroll in the United States Navy.

11. Following his honorable discharge on September 18, 2007, Mr. Lovell contacted Con Ed about returning to his former job.

12. In October of 2007, Mr. Lovell was hired by Con Ed as a Customer Field Representative for the Brooklyn region.

13. In August of 2008, Mr. Lovell was promoted to Customer Operations Supervisor. Mr. Lovell supervised and managed twenty (20) employees.

14. As a supervisor, Mr. Lovell's job duties included reviewing employees, establishing goals and identifying inefficiencies. Inefficiencies and poor performance from Mr. Lovell's team could result in substantial financial losses by Con Ed. Therefore, it was imperative that Mr. Lovell be honest in his critiques of his employees.

**A.  Demographics of Defendant Con Ed**

15. Mr. Lovell's direct supervisors were Ralph Pica and Paul Olmsted, both white males.

16. Joanna Wolff, a white female, was the General Manager of Field Operations South.

17. Marilyn Caselli, a white female, was the Senior Vice President for Customer Operations.

18. Mr. Pica supervised sixteen (16) supervisors, of which four (4) were Caucasian.

**B.  Mr. Lovell is Treated Differently than White Supervisors**

19. Mr. Lovell was treated differently from similarly situated white supervisors.

20. Mr. Pica permitted Joseph Catalano Jr., a supervisor in the same position as Mr. Lovell, to work in the office, instead of working "in the field" like Mr. Lovell.

21. Mr. Catalano received several complaints from the Customer Field Representatives that he supervised. However, upon information and belief, Mr. Pica did not instruct Mr. Catalano to take a communications refresher course or instruct him to improve his communication skills.

22. While Mr. Lovell was responsible for supervising approximately twenty (20) employees, Mr. Catalano only supervised two (2) employees.

23. Mr. Catalano often played video games on his work computer but was not reprimanded by Mr. Pica or Mr. Olmsted. In fact, Mr. Catalano received an employment award from Defendant.

24. While the Defendant's supervisors, including Mr. Pica and Mr. Olmsted, permitted Mr. Catalano to work extensively inside the office, Mr. Lovell was often reprimanded for spending too much time on administrative work in the office.

**C. 2011 Performance Evaluation**

25. Mr. Lovell received yearly performance evaluations.

26. Mr. Lovell's 2011 evaluation set forth that he allegedly had issues with his communication skills. Mr. Lovell questioned Mr. Pica about the evaluation. In response, Mr. Pica admitted that Mr. Lovell does not have a communication problem.

27. Mr. Pica admitted to Mr. Lovell that the performance evaluation was written to "get Wolff, the Union and Caselli off [his] back."

28. Further, Mr. Pica told Mr. Lovell that "everybody is after me [Mr. Pica]" because "they think I am protecting you [Mr. Lovell.]"

29. In August 2011, Mr. Olmsted became Mr. Lovell's supervisor.

30. In March of 2012, Mr. Lovell's evaluation (for the 2011 year) set forth that he needed to improve his communication skills because his communication allegedly resulted in various complaints by Customer Field Representatives. The evaluation set forth that Mr. Lovell should attend leadership development courses and a twelve (12) week

communication refresher course.  Mr. Olmstead informed Mr. Lovell that the twelve (12) week communication course would be at his own expense.

31. Upon information and belief, Mr. Lovell's African American co-workers, Trudy Street and Lisa Davis, also received negative performance evaluations from Mr. Olmsted.

32. Contrary to Mr. Lovell's negative performance evaluation, for which his communication skills were questioned, Mr. Olmsted requested Mr. Lovell to speak at executive meetings.

**D.  Mr. Lovell is Denied a Promotion**

33. In July of 2011, Mr. Lovell applied to work as a manager who would report to Ms. Wolff.

34. Mr. Lovell did not even receive a telephone interview for the position, despite his qualifications, which included five (5) years of training as an aviation electrician while serving our country in the Navy.

35. The position was given to Ronald Howard, who, upon information and belief, did not have electrical background experience.

36. Mr. Lovell asked Ms. Wolff to explain why he did not even receive an interview for the subject management position. Ms. Wolff responded that Mr. Lovell was not "specific" in his application.

37. In his application, Mr. Lovell set forth detailed reasons why he should be promoted to manager.

**E.  Mr. Lovell Attempts to Complain to Management**

38. Mr. Lovell attempted to make complaints about discrimination to Ms. Wolff, but she did not listen. However, Ms. Wolff was aware that Mr. Lovell made an internal complaint with Defendant's EEO specialist Lonnie Albaugh.

39. Finally, on March 16, 2012, Mr. Lovell attempted to make a complaint to Mr. Olmsted about the negative performance evaluation he received. In response, Mr. Olmsted asked, "Do you want to resign?"

40. Although under constant stress at work because he was continuously reprimanded for the way he treated his employees, Mr. Lovell had not considered resigning from Con Ed. However, after Mr. Olmsted urged him to resign, Mr. Lovell felt if he did not resign, he would be terminated.

**F. Mr. Lovell Files with the New York State Division of Human Rights**

41. On March 20, 2012, Mr. Lovell filed a complaint with the New York State Division of Human Rights ("NYSDHR") (*Marvin Franklin Lovell v. Consolidated Edison Company of New York, Inc.,* Case No.: 10154304) alleging harassment and receipt of an unwarranted negative performance evaluation.

42. Said complaint was dual-filed with the Equal Employment Opportunity Commission ("EEOC") (Charge No.: 16GB202443).

43. On September 19, 2012, the EEOC issued a Notice of Right to sue to Mr. Lovell.

44. Mr. Lovell has complied with all conditions precedent applicable to the instant action.

## COUNT I
## DISCRIMINATION AND HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

45. Plaintiff hereby repeats and realleges all allegations as if fully set forth herein.

46. Defendant Con Ed is an "employer" as defined in the City HRL.

47. Mr. Lovell is an "employee" as defined in the City HRL.

48. New York City Human Rights Law § 8-107 makes it an unlawful discriminatory practice:

> for an employer, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person to discriminate against such person in

compensation or in terms, conditions or privileges of employment.

49. Defendant Con Ed violated Mr. Lovell's rights under the City HRL by discriminating against Mr. Lovell on the basis of his race.

50. Defendant Con Ed affirmatively encouraged and condoned said unlawful conduct by allowing it to continue throughout the tenure of Mr. Lovell's employment at Defendant Con Ed.

51. Defendant Con Ed was aware of the discriminatory conduct based upon Mr. Lovell's complaints to supervisors.

52. Despite notice, Defendant Con Ed failed to exercise reasonable diligence to prevent such discriminatory conduct from occurring.

53. Defendant Con Ed's acts and conduct were intentional and malicious, and in complete, reckless disregard for the rights of Mr. Lovell.

54. The aforementioned acts of Defendant Con Ed constitute unlawful discrimination on the basis of race in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, § 8-107 under the City Human Rights Law and accordingly, Defendant Con Ed is liable to Mr. Lovell pursuant to § 8-502 of said statute for damages, including punitive damages and attorney's fees.

55. In addition to suffering significant loss of income and other benefits and privileges of his employment, Plaintiff was caused to suffer and will continue to suffer, and has sustained and will sustain severe emotional and psychological harm and resulting injuries including mental pain, anguish and suffering, has and continue to be humiliated, demeaned, and otherwise mentally and emotionally degraded all because of Defendant Con Ed's conduct in violation of his respective statutory and human rights.

56. As a proximate result of Defendant Con Ed's conduct, Plaintiff has been adversely affected in his employment, in his normal life pursuits, and Plaintiff believes that the injuries inflicted upon him as a direct result of the occurrences complained of herein have and will continue to have an irreparable, devastating effect upon the quality of his life.

## COUNT II
## DISCRIMINATION AND HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF THE STATE HRL

57. Plaintiff hereby repeats and realleges all allegations set forth as if fully set forth herein.

58. Defendant Con Ed is an "employer" as defined in the State HRL.

59. Mr. Lovell is an "employee" as defined in the State HRL.

60. Defendant Con Ed, by reason of the foregoing occurrences, and by their behavior, actions and conduct, did discriminate against Mr. Lovell.

61. The aforementioned acts of Defendant Con Ed constitute unlawful discrimination based on race under the State HRL in violation of Article 15, §290 *et. seq.,* of New York State Executive Laws.

62. Despite placing Defendant Con Ed on notice of inappropriate conduct, Defendant Con Ed failed to take appropriate remedial action and forced Mr. Lovell to tolerate a hostile work environment and eventually forced Mr. Lovell into a constructive discharge.

63. Defendant Con Ed, by its conduct, discriminated against Mr. Lovell and forced him to endure adverse employment actions affecting and altering the terms, conditions and privileges of his employment in violation of Article 15, § 290 *et. seq.* of New York State Executive Laws, and specifically §296 thereof.

64. As a result of Defendant Con Ed's unlawful conduct, Defendant Con Ed and Defendant Con Ed is liable to Mr. Lovell pursuant to State HRL §297(9) for damages and such other

remedies as may be deemed just and appropriate.

65. Defendant Con Ed's acts and conduct were intentional and malicious, and in complete, reckless disregard for the rights of Mr. Lovell.

66. In addition to suffering economic and compensatory damages, Mr. Lovell was caused to suffer emotional and psychological harm and resulting injuries including mental pain and suffering.

**WHEREFORE,** Plaintiff demands that judgment be entered in his favor awarding the following:

a. Compensatory damages in an amount to be determined by a jury sufficient to compensate Plaintiff for all pain and suffering, humiliation, emotional distress, stress and mental anguish;

b. Economic damages in the form of back pay and compensation for lost benefits, plus pre judgment interest;

c. Damages in the form of front pay or reinstatement, plus pre judgment interest;

d. Reasonable costs and attorney's fees; and

e. Any such further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable as of right by jury.

Dated:   New York, New York
        December 14, 2012

                                      Respectfully submitted,

*Vincent Imbesi*

By: _____
              Vincent, Esq.
              IMBESI CHRISTENSEN
              450 Seventh Avenue, Suite 3002
              New York, New York 10123
              vimbesi@lawicm.com
              Ph. (212) 736-5599

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------X

MARVIN LOVELL,

                              Plaintiff,

    v.

CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC.

                              Defendant.

-----------------------------------------------------------------X

# SUMMONS AND COMPLAINT

**IMBESI CHRISTENSEN**
450 7th Avenue, Suite 3002
New York, NY 10123
(212-736-5599)
*Attorneys for Plaintiffs*

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the Courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:* December 14, 2012                  *Signature:*/s/ Vincent Imbesi

                                            Print Signer's Name: Vincent Imbesi, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------x

MARVIN LOVELL,

**AFFIDAVIT OF SERVICE**
Index No. 158889/2012

Plaintiff(s),

-against-

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC,

Defendants(s).

-----------------------------------------------------------------x

State of New York      )
County of New York   )   ss.:

Rebecca Roth, being duly, deposes and says that deponent is over the age of eighteen years and is not a party in this proceeding.

At approximately 10:24 AM on the December 18th, 2012, at 4 Irving Place New York, NY 10003, Rebecca Roth personally served a true copy of the E-file Notice, Summons and Complaint in this matter on Consolidated Edison Company of New York, Inc. by delivering the said copy to office administrator, Anthony Drago.

Approximate Description of Recipient:

| Age: 45 | Skin Color: White | Height: 5'9" |
|---------|-------------------|--------------|
| Sex: Male | Hair Color: Black | Weight: 200 lbs |
| Other: N/A | | |

**LUCIEN SZE**
Notary Public, State of New York
No. 01SZ6211836
Qualified in New York County
Commission Expires September 21, 20 13

Subscribed and sworn to
before me this 18th day
of *December*

*Rebecca Roth*
Rebecca Roth
License# 1404363

# Yr 2011 Performance Review Form A for Marvin F Lovell



| | |
|---|---|
| Last Name: | Lovell |
| First Name: | Marvin |
| Employee No.: | 87570 |
| Title: | Customer Ops Supervisor |
| Organization: | Customer Operations |
| Section: | CUST OPS Brooklyn Meter Ops |
| Manager: | Paul A Olmsted |

| | |
|---|---|
| Originator: | Rosemarie E Stewart (71309) |
| Review Period: | 01/01/2011 - 12/31/2011 |
| Due Date: | 03/16/2012 |

**Be sure to read the Performance Review Guide before you complete this form.**

Please update this section to reflect goals that were assigned to the employee either during or subsequent to the last review.  Click on the words Sample Goals to see examples of clearly defined goals.

**Category: Safety**
**Goal Description:** Maintain a safe work environment, not exceeding more than nine industrial injuries and one preventable vehicle accident

Complete required JSSEs and submit 2 to EH&S each month

**Category: Employees**
**Goal Description:** Conduct 54 or more CFR field inspections per month

**Category: Customers**
**Goal Description:** Read 83.2% of the meters in Brooklyn and 77.7% of the meters on the first attempt (Type 1)

Reduce all pending AIO 27s & 29s to no greater than 6 months

Summarize the employee's performance against established goals (refer to the Goals Section above) and other objectives.  Compare performance to expectations giving particular attention to the employee's commitment to The Way We Work principles.  Include comments about EEO and environmental/safety issues in the spaces provided.

**Manager's Summary:**
Marvin Lovell is a Customer Operations Supervisor in Brooklyn Meter Operations. For the first seven months, of the year, Marvin was assigned to the Cycle West team; in August, he was transferred to Cycle East. Marvin's primary responsibility is supervising a cycle meter reading team of thirteen full-time Customer Field Representatives (CFRs). His daily activities involve dispatching CFRs from designated meeting spots in the field, conducting daily job briefings and weekly safety tailgate talks, performing field pick-ups and Jobsite Safety Evaluations (JSSEs), conducting disciplinary interviews, responding to CFR calls for assistance and customer complaints, preparing monthly performance evaluations of CFRs, verifying physical clear access conditions and meter removals, and monitoring safety, quality, productivity, and goal performance.

During this past year, Brooklyn Meter Operations contributed to the achievement of the Meter Reading KPI and the Water Meter Reading Revenue KPI. During the year both Queens and Brooklyn embarked on a route restructuring project through Route Smart, and the new routes were rolled out in Brooklyn in September. Marvin participated in the effort with the consultant to validate routes and then on implementation after the rollout. This change was met with some resistance from CFRs and as a result it took longer than anticipated to acclimate them to the new routes. As a result, Type 1 cycle meter reading percentage was 76.2% in Brooklyn, slightly above the target, and the overall meter reading performance was 82.6%, slightly below the target. Despite this, Brooklyn earned over $190,000 in water meter reading revenue, exceeding their target.

During the year, Marvin's performance was hampered by his poor communications skills, poor judgment, and poor leadership. In August, his manager concluded that Marvin would benefit from the opportunity to start fresh in a new area, and moved him from Cycle West to Cycle East.

The ability to communicate clearly, make good decisions, and display effective leadership is a critical part of a Customer Operations Supervisor's job. Supervisors work largely independently in the field supervising a large number of CFRs who work in various areas each day. They must be able to make reasonable decisions with incomplete information and resolve concerns in a productive, professional manner. In these critical areas Marvin's performance does not meet expectations. On several occasions, Marvin showed very poor judgment. In one case, he initiated an unnecessary confrontation with a union official that escalated significantly. In another case, he got into a confrontation with bargaining unit employees in another Customer Operations department. In both of these cases, Marvin chose to enforce his authority as a supervisor based on an incomplete understanding of company policy and without considering other, less confrontational options, consistent with the level of the immediate hazard. As a result, minor issues escalated into major incidents.

Overall, Marvin's performance is unsatisfactory. In 2011 Marvin failed to demonstrate that he can make good judgments, effectively communicate, and effectively lead his team. These are core requirements of a Customer Operations field supervisor. As a result of his failure in these critical areas, Marvin is being placed on a Performance Improvement Notice. He must demonstrate immediate, significant, and sustained improvement in the areas cited in this review. Failure to do this will result in the termination of his employment.

**Manager's Comment on EEO:**
Marvin's interactions with managers, peers, and CFRs in his day-to-day activities demonstrate his understanding of and compliance with EEO guidelines. He does a good job of communicating and reinforcing the company's Code of Conduct, policy, mission, values, and goals. He generally acts with due respect for the different backgrounds, perspectives, and opinions of those he encounters.

**Manager's Comment on Environmental/Safety:**
Marvin has met all environmental and safety requirements applicable to Field Operations. He is versed in the Company's safety programs and is committed to supporting them. He conducts thorough job briefings, meetings, and tailgate safety talks with his employees. In 2011, Brooklyn Meter Operations incurred four industrial accidents, compared to two in 2010 and a guide of nine. During the reporting period, two of Marvin's employees had recordable injuries.

Brooklyn Meter Operations had 14 Clear Access cases over one year old in 2011 versus a year-end goal of 17 cases. Regarding open Clear Access cases, Brooklyn Meter Operations ended 2011 with 64 open cases, 11 cases under its goal of 75 cases. Marvin assisted in achieving these results. He must continue to assist his colleagues in 2012 to ensure that flea and physical cases are cleared in a timely and appropriate manner throughout the year.

**Note: Complete this section if any of the following conditions apply:**

- The employee has performed the job for one year or less.
- The immediate supervisor is evaluating the employee for the first time.
- The employee's overall performance is unsatisfactory, needs some improvement, OR has changed significantly since the last review.

Characteristics that are considered critical to effective job performance are defined below. The Performance Review Guide and the Writing Assistant provide some examples of behaviors that indicate different performance levels for each characteristic. Describe in the Comments section for each MPF the behaviors that the individual has demonstrated during the review period. **Include examples to support your evaluations.**

Openly communicates with others, including managers, peers, direct reports, and customers, as applicable.

Shares information and actively listens to others. Responds to inquiries in a timely manner and with appropriate disclosure. Provides frequent updates of works in progress. Respectfully offers feedback and alternate points of view. Uses oral and written communications effectively.

Rating: Needs Improvement

**Comments by Paul A Olmsted:**
Overall, Marvin's communication skills need improvement. Last year, Marvin's review noted, "He needs to work on his communication style to ensure CFRs are not receiving a mixed message that leads to complaints that may have been avoided through a clear succinct message, rather than a revised explanation." This year, Mr. Lovell continued to struggle in this area.

During the year, several of Marvin's communications with CFRs led to conflict. For example, a new employee understood Marvin to be demanding he take off a work boot at an outdoor meeting with snow on the ground. In another, an experienced employee with a perfect disciplinary record called a time out when Marvin demanded that he wear a shared hard-hat. While Marvin was correct that the employee could not enter the work-site without a hard hat, his approach provoked a confrontation.

In order to be successful, Marvin must demonstrate that he has learned that each employee is unique and driven by different motivations. He must also learn to think about the impact his words have on others and be willing to adjust his message and approach accordingly.

Achieves effective business results by focusing on external and internal customer satisfaction. Is customer-driven and changes mode of operation to meet customer needs.

Rating: Meets Expectations

**Comments by Paul A Olmsted:**
Marvin has demonstrated a commitment to providing good customer service. He monitored the performance of his CFRs appropriately, by reviewing real-time reports on their activities, in order to ensure that they were being productive.

Demonstrates sound judgment, open-mindedness, and strength of conviction reflecting a clear sense of accountability. Analyzes and evaluates all appropriate information and alternatives. Thinks outside of the box and focuses on problems and solutions. Considers traditional and creative alternatives, risks, and impact. Incorporates lessons learned in future plans. Makes timely decisions.

Rating: Does Not Meet

**Comments by Paul A Olmsted:**
Marvin demonstrated very poor judgment in dealing with several incidents as a result of rigidly applying his interpretation of company or departmental policy. One case involved a non-employee union official who had visited the morning meeting spot (located on a city sidewalk) and attended the safety briefing. As the official was leaving the meeting, Marvin followed him, demanding that he wear safety shoes. Marvin did not think through whether the Company's safety policy applied to a non-employee visitor. And, by choosing to pursue the official as he was leaving, Marvin needlessly initiated a confrontation. When his manager discussed this incident with him, Marvin attributed the outcome entirely to the actions of the other person and was unable to recognize his responsibility for instigating the confrontation.

In another case, Marvin got into a confrontation with weekly field employees from another Customer Operations department, showing behavior similar to that described above. Hee was convinced that he understood a departmental policy, wrongly concluded that there was an immediate risk, and decided to rigidly enforce the policy without considering alternative strategies. As a result, the situation escalated unnecessarily. When he discussed this incident with his manager, Marvin either defended or tried to justify his actions and failed to recognize that his decisions had played any part in the unsatisfactory outcome.

Marvin demonstrated rigid behavior in another case: his manager had forwarded wording from HR to use in a significant disciplinary interview with an explicit instruction to use the wording. Instead, Marvin ignored the directive, used different wording, and chose not to inform his manager that he had done so. Marvin later told his manager that HR had always told him to use the wording that he used, so he decided to use it again, regardless of the explicit contrary direction. And he attempted to shift responsibility from himself to his manager, by blaming the manager for failing to notice the change that Lovell had made. This behavior is

inconsistent with the Way We Work Principle of Accepting Responsibility.

Going forward, Marvin must think before he acts when faced with challenges. He should consider his options and the likely outcomes of each option before going forward.

Plans the work and works the plan. Is self-motivated and strives to accomplish objectives. Demonstrates personal responsibility and accountability. Adapts to change and seeks out different ways to improve the quality of work and the work environment.
Rating: Meets Expectations

**Comments by Paul A Olmsted:**
Marvin has sought out ways to improve activities in the section. For example, in 2010 he had developed permanent route assignments for CFRs and he updated these in 2011 to reflect changes in staffing. In the coming year, Marvin should seek out opportunities to make further changes, such as scheduling meetings with his team of CFRs. He is responsive to his manager's requests and usually provides a quality product in a timely manner.

Demonstrates proficiency, expertise and understanding of information necessary to perform job well to achieve a standard of excellence. Acquires and integrates knowledge to accomplish goals. Applies techniques and experience to perform job effectively. Improves continuously by increasing knowledge and skills.
Rating: Meets Expectations

**Comments by Paul A Olmsted:**
Marvin was a meter reader before he became a supervisor and he is knowledgeable about the activities and processes of meter reading. Marvin also demonstrated good knowledge of his supervisory administrative responsibilities. For example, Marvin keeps up with his monthly evaluations of his employees' performance and the evaluations are consistently thorough.

Helps to create and reinforce a shared sense of purpose by supporting the policies and programs of the company. Adheres to the Standards of Business Conduct and The Way We Work principles. Motivates and develops people to accomplish results. Provides and accepts positive feedback on the efforts and achievements of others, as well as offers constructive criticism and coaching to improve performance. Uses personal influence, expertise, and reliability to create respect and confidence. Works in teams. Appreciates the diversity of ideas. Openly and directly communicates with the team. Contributes to and celebrates the success of the team.
Rating: Needs Improvement

**Comments by Paul A Olmsted:**
To be effective in his role, the supervisor must be able to build a relationship with his employees, use coaching to improve performance, and personal influence to create the respect and confidence of others. Marvin's weaknesses in communication and leadership undermined his ability to build such relationships with his team.

Marvin must learn to take responsibility for his mistakes. In discussions with his manager about events described in this review, he was unwilling to acknowledge any culpability for their outcome or that he had an opportunity to learn from them. Instead he blamed others, including his manager.

**This section is optional if you completed the MPFs.**
Describe the employee's key strengths. (Relate comments to the MPFs and commitment to The Way We Work principles.)

**Manager's comment on strengths:**

Describe the key areas in which performance should be improved or enhanced and the recommended action plan (e.g. on-the-job assignments, coaching, mentoring, formal training, etc.). The plan should address strengths and

areas for development. Please note if the employee is being placed on a Performance Improvement Notice.

**Manager's comment on areas for development and development plan:**
In order to be an effective Customer Operations Supervisor, Marvin must be able to communicate effectively, demonstrate strong judgment and leadership skills.

To aid in his development in these areas, Marvin has been scheduled to attend the following Leadership Development courses offered by the Learning Center: Supervisor/Team Leader (LDS4003) and Managing Workplace Conflict (LMD0216). It is also recommend that he completes the 12-week Dale Carnegie program on Effective Communication Skills. After each program, Marvin will be expected to discuss with his manager key lessons learned and how he intends to make personal application. His manager will provide coaching and guidance as needed.

Marvin must also focus on safety and improving meter reading performance over the upcoming months. In addition, he should assist his colleague in reducing AIO Code 27 and 29s to help in achieving the goal of eliminating the backlog by the end of the year.

Marvin must continue to maintain quality field pick-ups and JSSEs, including increased PM pick-ups, in the coming year in order to provide a physical presence to assist his CFRs. Quality pick-ups and JSSEs should focus on providing individual performance feedback to the CFR, emphasis on situational awareness, coaching tips, customer service tips and discussing actual versus goal performance for safety, environment, and cycle.

This review is a performance improvement notice.

Choose the rating that best describes the employee's overall performance.  This rating reflects performance on goals, MPFs, and other relevant factors (e.g. developmental objectives, discretionary effort, reliability, etc.). Click on the words "Overall Form Rating" below to see a detailed definition of the rating scale.

Overall Form Rating: **Unsatisfactory**

List goals for the coming year that will support key business objectives, enhance job performance and/or career development.  Employee input is encouraged. You may use the "Add New Goal" button to select from a list of goal categories and a goal library.  Click on the words Sample Goals to see examples of clearly defined goals.

**Category: Safety**
**Goal Description:** Maintain a safe work environment, striving for zero accidents and no preventable vehicle accidents in 2012 but not exceeding five industrial injuries and one preventable vehicle accidents this year

Complete required JSSEs and submit 2 to EH&S each month

**Category: Employees**
**Goal Description:** Conduct 54 or more CFR field inspections per month

Update the QC folders of each employee by the 15th of the following month

**Category: Customers**
**Goal Description:** Ensure that Brooklyn MOP reads 83.0% of the meters and 78.5% of the meters on the first attempt (type 1)

Ensure that Brooklyn MOP reads 85.6% of all billable demand meters in Brooklyn

Employee's signature certifies only that he/she has seen the Performance Review and has had a discussion with his/her immediate supervisor. It does **not** necessarily mean that the employee agrees with the contents of the review.

The employee has the opportunity to add any comments in the space for Section Comments.

2nd Level Manager: _____      _____
                   Joanna M Wolff

Manager:           _____      _____
                   Paul A Olmsted

Employee:          _____      _____
                   Marvin F Lovell

# 2010 Performance Review (Form A) for Marvin F Lovell



## EMPLOYEE INFORMATION

| | |
|---|---|
| Last Name: | Lovell |
| First Name: | Marvin |
| Employee No.: | 87570 |
| Title: | Customer Ops Supervisor |
| Last Review Date: | 04/01/2009 |
| Organization: | Customer Operations |
| Section: | CUST OPS Brooklyn Field Ops |
| Manager: | Ralph S Pica |

## REVIEW INFORMATION

| | |
|---|---|
| Originator: | Rosemarie E Stewart (71309) |
| Review Period: | 01/01/2009 - 12/31/2009 |
| Due Date: | 03/12/2010 |

## PERFORMANCE SUMMARY

**Be sure to read the Performance Review Guide before you complete this form.**

Summarize your evaluation of the employee's performance and compare performance to expectations during this review period, giving particular attention to the employee's commitment to The Way We Work principles. Include comments about EEO and environmental/safety issues in the spaces provided. Choose the rating that best describes the employee's overall performance (e.g., exceeds expectations in some areas, satisfactory, etc.).

**Manager's Summary:**
This review covers the period January 1, 2009 through December 31, 2009 while Marvin Lovell was assigned the job functions and responsibilities of a Customer Operations Supervisor in Brooklyn West Cycle Meter Operations. Marvin graduated the Team Program in July 2009 and as such received his last performance review on June 24, 2009. His previous review has been updated to include the second half of 2009.

Marvin's primary responsibility was supervising a cycle (Type 1) meter reading team. His direct reports include sixteen full-time Customer Field Representatives (CFRs). His daily activities involve dispatching CFRs from designated meeting spots in the field, conducting daily job briefings and weekly safety tailgate talks and performing field pick-ups and disciplinary interviews, responding to CFR calls for assistance and customer complaints, monthly performance evaluations of CFRs, verifying physical clear access conditions and meter removals, and monitoring safety, quality, productivity and goal performance. Marvin faced several challenges since becoming a new supervisor in the West cycle area, namely that of learning his role as a supervisor to motivate employees; water meter reading performance and learning the business of Meter Operations in general.

Marvin motivated his CFRs in the Cycle West Team into remaining and developing into a productive team. In 2009, Brooklyn Meter Operations achieved its apportionment for the PSC cycle goal of 81.55%; as a region we read 83.3% or 1.75% greater than the goal and 1.2% better than our 2008 performance. Regarding Type 1 performance, we read 79.5% which was 3.4% better than our goal of 76.1% and 1.4% better than our 2008 performance. Marvin is a supervisor in the Cycle West Team that read 78.1% of their assigned meters in 2009 which was a 1.0% greater than their local overall goal of 77.1%; regarding their Type 1 performance, they read 73.7% in 2009, which was a significant 2.2% better than their assigned local goal of 71.5%. The Cycle West Team continued to make significant strides in improving their Type 1 and overall performance in 2009. The challenge in 2010 is to continue to work as a team on enhancing our Type 1 performance and reducing the unit cost of meter reading. Regarding water meter reading performance, Brooklyn Meter Operations unadjusted reading performance was 82.00% of its assigned water meters representing a reduction of 0.8% from 2008, predominantly as a result of the DEP installing AMR meters. However, the department must look for ways to offset these looses in 2010 by developing alternate methods on LTNA and hard-to-read meters and capitalize on attempting to read every main water meter where possible. Our water meter reading performance also resulted in the organization exceeding its water revenue budget of $897,000 by $66,000 or $963,000 and was a significant contributor to Field Operations achieving its water revenue KPI.

Marvin is very active in the field working with his employees on a daily basis. During the rating period Marvin accomplished 634 employee field pick-ups. He must continue to maintain quality field pick-ups, increasing PM

pick-ups, in the coming year in order to provide a physical presence to assist his CFRs. Quality pick-ups should focus on providing individual performance feedback to the CFR, coaching tips, customer service tips and discussing actual versus goal performance for safety, environment, cycle, water, etc. Marvin has developed good administrative and PC skills. He is extremely responsive to his manager's requests and provides a good product in a timely manner. His writing skills are good and reflected in the performance evaluations, incident reports and real time reviews he performs. As many of Marvin's writings include statistical information, he must always proof the data to ensure it is accurate and properly supports any disciplinary action.

During the year Marvin's conducted reviews of DNR routes in Cycle West to identify and determine resolutions that would assist the CFRs towards working achievable routes, minimizing possible overtime and improving the overall cycle performance. His approach to this responsibility is identifying DNR routes, validating the reason for the DNRs to ensure it was not related to performance and evaluating other routes to reassign meters or if needed build a new route. This function has helped the Cycle West operation improve their overall performance on Type 1's. Earlier and during periods of his team assignment Marvin experienced difficulties with his new role as a supervisor. Some of this may be a result of transitioning from a military career to one in the public sector. Marvin is a strong willed and determined individual and has worked to recognize that each employee is unique and driven motivationally differently. Since his last review Marvin has shown improvement in being defensive and has been more open to others comments and suggestions that are meant to be informative and helpful. When challenged after an All-Hands Meeting by a Business Agent, Marvin held his position and politely informed the B.A. that he has a job to do and a responsibility to his position and when pressed kept a cool, calm and steady demeanor. In September, Marvin was assigned to champion the quality of Report of Irregular Conditions, RICs reported by CFRs. He focused on the more highly reported RICs such as demolished and blocked and prepared and presented a Tailgate to improve the reporting of several RICs. He must continue to drive the quality of these RICs as they have a direct impact on the department and other organizations that may perform unnecessary follow-ups.

Marvin supports the six principles of The Way We Work in his day-to-day duties and responsibilities. He accepts responsibility for his work which is demonstrated by the fact that he has identified employees who were not performing at an acceptable level and took appropriate corrective action to resolve employee performance deficiencies. Marvin communicates openly with his staff and maintains a good union/ management workforce relationship. To ensure open communications amongst his colleagues, Marvin has coordinated and facilitated periodic meetings to resolve issues without interaction by their manager that has fostered continuous improved communication and operational continuity for the supervisory team. Marvin's review and analysis of cycle reports for Brooklyn West Field Operations has resulted in the identification of CFRs requiring closer supervision and additional training and helped us to continuously improve. He is a team player and is always willing to assist a colleague on assigned responsibilities such as assisting in preparing the ZAP and 365 Accident Free safety celebrations, investigating pending AIO 27s and 29s and attempting to locate/ obtain readings for LTNA meters. He celebrates the success of his team's accomplishments through the distribution of scratch off lottery tickets and through the submittal of several CLASS Award and Employee-of-The-Month nominations.

Marvin's overall performance is fully satisfactory and he has met or exceeded my expectations of his position in all performance factors.
**Manager's Comment on EEO:**
Marvin interactions with managers, peers and CFRs in his day-to-day activities demonstrate his understanding and compliance of EEO guidelines. He does a good job of communicating and reinforcing the company's Code of Conduct, policy, mission, values and goals. He acts in a professional manner with due respect to the different backgrounds, perspectives and opinions of those he encounters.
**Manager's Comment on Environmental/Safety:**
Marvin has met all environmental and safety requirements applicable to Field Operations. He is versed in the Company's safety programs and is committed to supporting them. He conducts good job briefings, meetings and tailgate safety talks with his employees on a regular. In 2009, Brooklyn Meter Operations incurred 8 industrial accidents vs. a guide of 12, a significant accomplishment. During the reporting period Marvin's employees experienced one industrial accident, an indication that increased safety talks and programs will assist his team in staying focused. He also contributed to Field Operations, Field Observation KPI by performing two field observation forms every month in 2009.

Brooklyn Meter Operations had 12 CATS cases over one year old in 2009 versus a year-end aging goal of 17 cases. Regarding open Clear Access cases, Brooklyn Meter Operations ended 2009 with 56 open cases, 19 cases under their goal of 75 cases. The Cycle West Team ended 2009 with 22 open Clear Access cases, 13 cases under their goal of 35. Marvin assisted Team West's CATS champion towards achieving this goal. He must continue to assist his colleague in 2010 to ensure flea and physical cases are being cleared in a timely and appropriate manner throughout the year.
Safety Performance Review Criteria

**MANAGEMENT PERFORMANCE FACTORS (MPF's)**

**Note: Complete this section if any of the following conditions apply:**

- The employee has performed the job for one year or less.
- The immediate supervisor is evaluating the employee for the first time.
- The employee's overall performance is marginal, unsatisfactory OR has changed significantly since the last review.

Characteristics that are considered critical to effective job performance are defined below. The Performance Review Guide and the Writing Assistant provide some examples of behaviors that indicate different performance levels for each characteristic. Describe in the Comments section for each MPF the behaviors that the individual has demonstrated during the review period. **Include examples to support your evaluations.**

**Communications**
Openly communicates with others, including managers, peers, direct reports, and customers, as applicable. Shares information and actively listens to others. Responds to inquiries in a timely manner and with appropriate disclosure. Provides frequent updates of works in progress. Respectfully offers feedback and alternate points of view. Uses oral and written communications effectively.
**Rating:** Meets Expectations

**Customer Focus**
Achieves effective business results by focusing on external and internal customer satisfaction. Is customer-driven and changes mode of operation to meet customer needs.
**Rating:** Exceeds Expectations

**Decision Making**
Demonstrates sound judgment, open-mindedness, and strength of conviction reflecting a clear sense of accountability. Analyzes and evaluates all appropriate information and alternatives. Thinks outside of the box and focuses on problems and solutions. Considers traditional and creative alternatives, risks, and impact. Incorporates lessons learned in future plans. Makes timely decisions.
**Rating:** Meets Expectations

**Initiative**
Plans the work and works the plan. Is self-motivated and strives to accomplish objectives. Demonstrates personal responsibility and accountability. Adapts to change and seeks out different ways to improve the quality of work and the work environment.
**Rating:** Exceeds Expectations

**Job Knowledge**
Demonstrates proficiency, expertise and understanding of information necessary to perform job well to achieve a standard of excellence. Acquires and integrates knowledge to accomplish goals. Applies techniques and experience to perform job effectively. *Improves continuously by increasing knowledge and skills.*
**Rating:** Meets Expectations

**Leadership**
Helps to create and reinforce a shared sense of purpose by supporting the policies and programs of the company. Adheres to the *Standards of Business Conduct* and *The Way We Work* principles. Motivates and develops people to accomplish results. Provides and accepts positive feedback on the efforts and achievements of others, as well as offers constructive criticism and coaching to improve performance. Uses personal influence, expertise, and reliability to create respect and confidence. Works in teams. Appreciates the diversity of ideas. Openly and directly communicates with the team. Contributes to and celebrates the success of the team.

**Rating:** Meets Expectations

---

**KEY STRENGTHS**

**This section is optional if you completed the MPFs.**
Describe the employee's key strengths. (Relate comments to the MPFs and commitment to The Way We Work principles.)

Writing Assistant:

**Manager's comment on strengths:**
Marvin has good writing skills and is generally able to articulate his ideas clearly and concisely, adapting his style and wording to each. Through his verbal communications, he coaches his employees on their electric and water meter reading performance contributing in our organizations efforts to achieve the Type 1 and overall cycle goal. He has continually improved his oral presentations by projecting a more confident tone and seeking opportunities to perform more public type speaking opportunities such as at the monthly All-Hands Meeting.

Marvin is more confident in his supervisor abilities and often makes routine day-to-day decisions regarding issues, especially pertaining to coaching and counseling his employees and administering verbal/ written warnings appropriately in an effort to correct improper performance. He stays calm under pressure which enables him to make good decisions. Marvin is always willing to take independent action. Requests by his section manager such as Real Time reviews are often responded to in a very timely manner. As a former CFR, Marvin has a good working knowledge of cycle operations and PET performance that enables him to perform his role as a cycle supervisor more efficiently.

Marvin demonstrates a clear understanding of the Standards of Business Conduct and can identify specific examples of how his team has benefited from this understanding. He does a good job of reinforcing the corporate mission, values, policies and goals, and has successfully applied the Way We Work principles. Earning the full respect of his employees is an important leadership quality that Marvin is working towards achieving and must recognize that each has a distinctive role and responsibility.

---

**KEY AREAS FOR DEVELOPMENT**

Describe the key areas in which performance should be improved or enhanced. (Relate comments to the MPFs and commitment to The Way We Work principles.)

Writing Assistant:

**Manager's comment on areas for development:**
2010 will be a financial challenging year for the company based upon the pending electric rate case and Brooklyn Meter Operations needs to ensure our labor resources are assigned and working to there maximum efficiency. In his supervisory capacity, Marvin must ensure he utilizes all available performance tools, such as Real Time, Gugig, Roberts Reports, etc. to monitor his employee's performance on type 1s and type 3s and ensure that CFRs are TIP-ing their PETs at the end of each work day.

In the coming year Marvin must continue learning the art of supervising employees and communicating with each employee on his team to foster a safe and productive working environment. He will be asked to build quality into everyone's jobs. Set expectations for each employee by making quality a part of their job description, ongoing objectives, and performance measurements; taking the time to speak to employees individually about their performance and giving timely feedback when necessary can do this.

Marvin should also continue to coordinate periodic supervisor meetings for Team West that ensure issues and concerns are properly resolved. This vehicle of communication will assist him in developing leadership skills and ensure open issues amongst his colleagues are being discussed/ addressed. He needs to continue developing his skills in cycle and should begin to learn some of the responsibilities of the office supervisor. Marvin should also take the initiative to increase is knowledge of CIS that will enable him to increase his overall performance.

---

**DEVELOPMENT PLAN**

**Employee input is encouraged.**
Indicate how performance will be enhanced over the next review period through formal training or by other activities, e.g. on-the-job training or special projects. This plan should address both strengths and key areas for development. Please note if the employee is being placed on a Performance Improvement Notice.

Writing Assistant:

**Manager's comment on development plan:**

Marvin has completed all required courses as scheduled through the team program for supervisors. He will now be asked to continue to take the pertinent ideas and topics he has learned in classroom settings and apply them to his job as a supervisor in Brooklyn Meter Operations. During the third quarter of 2010, he is scheduled to conduct a 4 week exchange program with a Call Center supervisor that will enable him to gain better insight into the Call Centers functions and share his knowledge of the field with his exchange supervisor. Marvin is also encouraged to continue on his quest to achieve his Bachelor's degree and attending Strategic Issues Seminars held after normal work hours at The Learning Center that are informative and developmental.

Marvin will be asked to focus on the following over the upcoming months: Safety, Improved performance in cycle meter reading and improved performance in water meter reading. He is also asked to review and conduct quality checks in regard to cannot locate meters/remotes for water. He must continue to increase his knowledge of the cycle and water meter reading problems encountered in the field and develop solutions to reduce their negative impact on the number of readings in order to achieve our assigned percentage goals.

Marvin will also be asked to continue to Championship the quality of RICs reported by the CFRs which has a direct impact on the department and other organizations if improperly reported. Additionally, he should assist his colleague in reducing AIO Code 27 & 29s that have a similar impact on the department's performance. Marvin must also continue in his effort to identify inefficient routes or routes that have increased in meter assignments above 8 hours due to the significant customer growth experienced in the West operational area as these routes have a direct impact on the department's overall cycle performance.

Communications is an essential key to the successes of any company/organization. This success is based on openly communicating significant company events and key organizational performance goals for safety, environment, cycle, water, etc. Marvin must be a champion for communication initiatives through presentations, job briefings and during field pick-ups and bring those visions to reality.

In 2010 Marvin should focus his attention on the following:
Achieve the Brooklyn Safety Goals (10 recordable and 1 preventable vehicle accident).
Conduct 2 safety field observations, using the published form, per month.
Achieve the Brooklyn Type I Meter Reading Goal of 77.4%.
Achieve the Brooklyn overall electric meter reading goal of 82.29%
Achieve the Brooklyn water meter reading contractual goal of 90.00%.
Conduct greater than 850 CFR field inspections.
Improve the overall performance of Brooklyn's Type 3 meter readings.
Improve in the quality and issuance of electric and water meter reading RICs.
Reduce the number of NYPA LTNA accounts.
Increase demand meter readings to minimize the number of Code 10 AIOs generated.
Achieve Brooklyn CATS goal of no more than 75 open cases and 17 open cases over 1-year.
Update personnel quality folders and documented evaluations of employees monthly.
Review Real Time Reports daily, weekly and monthly.

## OVERALL RATING

Indicate the employee's overall performance level. Click on the words "Overall Form Rating" below to see a detailed definition of the rating scale.

**Overall Form Rating:** _____ **Exceeds Expectations in Some Areas**

## YEAR END SIGNATURES

Employee's signature certifies only that he/she has seen the Performance Review and has had a discussion with his/her immediate supervisor. It does **not** necessarily mean that the employee agrees with the contents of the review.

The employee has the opportunity to add any comments in the space for Section Comments.

| | | |
|---|---|---|
| 2nd Level Manager: | *Joanna M Wolff* | *02/18/2010* |
| | Joanna M Wolff | |
| Manager: | *Ralph S Pica* | *03/02/2010* |
| | Ralph S Pica | |
| Employee: | *Marvin F Lovell* | *03/02/2010* |
| | Marvin F Lovell | |

Section Comments:
**Comments by Marvin F Lovell:**
This year I will concentrate on my key areas for development as stated in my evaluation. I will seek to improve in all of the key areas that my manager identified such as utilizing all available performance tools to monitor my employee's performance, ensuring that they are TIP-ing the PETs at the end of the day, learning the art of supervising, communication, learning some of the responsibilities of the office supervisor, and increasing my knowledge of CIS. In result it will definitely enable me to increase my overall performance.

EXHIBIT C

FILED: NEW YORK COUNTY CLERK 02/14/2013

NYSCEF DOC. NO. 14

INDEX NO. 158889/2012

RECEIVED NYSCEF: 02/14/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

MARVIN LOVELL,

                              **Plaintiff,**

                -against-

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,

                              **Defendant.**

-----------------------------------------------------------------X

Index No.: 158889/2012

**PLAINTIFF'S
MEMORANDUM OF LAW IN
OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS**

Plaintiff, by and through his attorneys, Imbesi Christensen, respectfully submits this

Memorandum of Law in Opposition to Defendant Consolidated Edison Company of New York,

Inc.'s Motion to Dismiss. For the reasons set forth below, Defendant's Motion should be

dismissed in its entirety.

## I.    PRELIMINARY STATEMENT

Plaintiff initiated this action on December 14, 2012, seeking damages and other

appropriate relief against Defendant Consolidated Edison Company of New York, Inc.

(hereinafter "Con Ed") pursuant to Article 15 of the Executive Laws of the State of New York,

§290 *et. seq.*, including §296 as amended, ("State Human Rights Law" or "State HRL"), and

Article 1, Section 8 of the New York City Administrative Code, § 8-101, *et. seq.,* ("City HRL").

On January 7, 2013, Defendant filed this motion to dismiss.

## II.    STATEMENT OF FACTS

Plaintiff began working for Con Ed as a Customer Field Representative in 2001. In 2002,

Plaintiff left his employment at Con Ed to enroll in the United States Navy. Following five (5) years in the Navy and an honorable discharge, Plaintiff was re-hired by Con Ed as a Customer Field Representative. Less than one (1) year later, Plaintiff was promoted to Customer Operations Supervisor.

As set forth in Plaintiff's Complaint, his direct supervisors, Ralph Pica and Paul Olmsted, were white males. Joanna Wolff, the General Manager of Field Operations South, and Marilyn Caselli, the Senior Vice President for Customer Operations, were white females.

Plaintiff's Complaint alleged that he was treated differently from similarly situated white supervisors. Mr. Pica permitted Joseph Catalano, Jr., a supervisor in the same position as Plaintiff, to work in the office, instead of working "in the field" like Plaintiff. Despite receiving several complaints from the Customer Field Representatives that he supervised, Mr. Pica did not instruct Mr. Catalano to take a communications refresher course or instruct him to improve his communication skills. Unlike similarly situated white supervisors, Plaintiff was instructed by Mr. Pica and Mr. Olmsted to take a communications refresher course and placed on a performance improvement plan.

Throughout his employment at Con Ed, Plaintiff was required to take multiple random drug tests. Plaintiff's white colleagues were not given the same number of drug tests. From August 2008 to March 2012, Plaintiff was regularly called upon to perform "Storm Duty"[1] in locations outside of his region, including Westchester, Mount Vernon and Queens. While "Storm Duty" was supposed to be rotated amongst supervisors, upon information and belief, Mr. Lovell was asked to work significantly more hours than similarly situated white colleagues. Specifically, Mr. Catalano often bragged about not being asked to work Storm Duty.

---

[1] When a storm causes damage to a power line, Customer Operations Supervisors were called upon to work extra shifts in order to restore power.

In July of 2011, Plaintiff applied to work as a manager under the supervision of Ms. Wolff. Plaintiff did not even receive a telephone interview for the position, despite his qualifications, which included five (5) years of training as an aviation electrician in the Navy. Ronald Howard, an employee with less experience than Plaintiff, received the position.

Plaintiff's 2011 performance evaluation set forth that he allegedly had a problem with his communication skills. Plaintiff questioned Mr. Pica about the evaluation. In response, Mr. Pica admitted that Plaintiff did not have a communication problem but that Mr. Pica was forced to write the negative evaluation to "get Wolff, the Union and Caselli off [his] back." Further, Mr. Pica told Plaintiff that "everybody is after me because they think I am protecting you." In 2012, Plaintiff's performance evaluation again set forth that he needed to improve his communication skills. The evaluation set forth that Plaintiff needed to attend a twelve (12) week communication skills course. Mr. Olmsted informed Plaintiff that the course would be at his own expense. Despite Mr. Olmsted negative review of Plaintiff's communication skills, Mr. Olmsted requested Plaintiff speak at several executive meetings. When Plaintiff questioned Mr. Olmsted about the negative evaluation, Mr. Olmsted asked Plaintiff if he wanted to resign. Based on Mr. Olmsted's actions, Plaintiff believed he would be terminated if he did not resign.

### III.   LEGAL ARGUMENT

#### A. Motion to Dismiss Standard

In deciding a motion to dismiss, the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.* 282 F.3d 147, 152 (2d. Cir. 2002). A motion to dismiss may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hernandez v.*

3

*Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994). The court should "accept as true the facts alleged in

the complaint [and] accord plaintiff the benefit of every possible inference." *Leon v. Martinez,*

84 N.Y.2d 83, 87-88 (1994). To survive a motion to dismiss, a plaintiff must allege "only enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twobly,* 550

U.S. 544, 569 (2007). The court must determine "whether the proponent of the pleading has a

cause of action, not whether he has stated one." *Guggenheimer v. Ginzburg,* 43 N.Y.2d 268, 275

(1977). The applicable standard is whether "reasonable inferences from the complaint sustain a

claim." *Harris v. IG Greenpoint Corp.,* 72 A.D. 3d 608, 609 (App. Div. 1d Dep't 2010). In the

present case, Plaintiff has sufficiently pled facts that would entitle him to relief. Therefore,

Defendant's motion to dismiss must be denied.

### B.  Election of Remedies

Mr. Lovell was unrepresented by counsel when he filed a charge of discrimination with

the New York State Division of Human Rights ("DHR"). The DHR's Determination and Order

after Investigation does not set forth that Mr. Lovell would lose his right to bring a suit in state

court if he did not appeal the determination. Further, on September 19, 2012, the EEOC issued a

Notice of Right to Sue letter, setting forth that Mr. Lovell had ninety (90) days to file a lawsuit.

### C.  Mr. Lovell Properly Pleads Racial Discrimination

As set forth in Plaintiff's Complaint and the foregoing Statement of Facts, Plaintiff pled

specific examples where he was treated differently from similarly situated white employees.

Defendant's motion to dismiss does not dispute Mr. Lovell's allegations. Courts assess

employment discrimination claims under a "particularly relaxed notice pleading standard." *Vig v.*

*New York Hairspray Co., L.P.,* 67 A.D. 3d 140, 145 (App. Div. 1d Dep't 2009. Plaintiff need not

4

plead specific facts, but "need only give defendant 'fair notice' of the nature and grounds of [his] claim." *Id.*

In order for a plaintiff to prove employment discrimination, four requirements must be met. *Forrest v. Jewish Guild for the Blind,* 3 NY 3d 295, 305 (2004). Plaintiff "must be a member of the protected class; he or she must be qualified to hold the position; he or she must have been terminated from their employment or suffered another adverse employment action; and the adverse action must have occurred under circumstances giving rise to an inference of discrimination." *Newell v. Atlantic Express Transp. Corp.,* 953 N.Y.S.2d 551, 552 (Sup. Ct. 2012). Mr. Lovell, an African American man, is a member of a protected class. Mr. Lovell had five (5) years of electrician training in the Navy and is qualified to hold his previous position, Customer Operations Supervisor, and the position given to Ronald Howard. Mr. Lovell suffered adverse employment actions when he was unjustly assigned to a performance improvement plan. He was informed that he would have to take a communications course at his own expense. Mr. Lovell could not afford the course and resigned after Mr. Olmsted asked him if he was going to resign. The circumstances infer discrimination because similarly situated white employees were treated differently.

### D. Mr. Lovell's State Court Complaint Differs from his DHR Complaint

Mr. Lovell's complaint with the DHR alleged unlawful discriminatory practices on the basis of creed and military status.  In his DHR complaint, Mr. Lovell complains of inappropriate comments against his religion, profanity and retaliation because of an internal complaint against management. The DHR complaint does not allege racial discrimination. Mr. Lovell's state court complaint alleges racial discrimination and specifically pleads instances where Con Ed treated

similarly situated employees differently than Mr. Lovell. Mr. Lovell's DHR complaint does not

allege specific examples of discrimination.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety.

Dated: New York, New York
       February 14, 2013


                                        /s/ *Brittany Weiner*
                                        _____
                                        Brittany Weiner, Esq.
                                        IMBESI CHRISTENSEN
                                        450 7th Avenue, Suite 3002
                                        New York, NY 10123
                                        (646) 380-9555
                                        *Attorneys for Plaintiff*

Index No.: 158889/2012
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

**MARVIN LOVELL,**

**Plaintiff,**

-against-

**CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,**

**Defendant.**

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

### IMBESI CHRISTENSEN
*Attorneys for Plaintiff(s)*
**450 Seventh Avenue, Suite 3002**
**New York, NY 10123**
**(646) 380-9555**

---

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the Courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:_____      Signature:_____*
*Print Signer's Name:_____*

---

7

Case 1:14-cv-07503-GBA-VMS   Document 6   Filed 06/30/15   Page 62 of 76   INDEX NO. 158889/2012

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **HON. ANIL C. SINGH**
**SUPREME COURT JUSTICE**

PART 61

_____Justice

Index Number : 158889/2012
LOVELL, MARVIN
vs
CONSOLIDATED EDISON COMPANY
Sequence Number : 001
DISMISS ACTION

INDEX NO. _____

MOTION DATE _____

MOTION SEQ. NO. _____

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s)._____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is *decided in accordance with the annexed memorandum opinion.*

**DECIDED IN ACCORDANCE WITH ACCOMPANYING DECISION / ORDER**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: 8/30/13

_____, J.S.C.
**HON. ANIL C. SINGH**
**SUPREME COURT JUSTICE**

1. CHECK ONE: ............................................... ☒ CASE DISPOSED          ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ..........................MOTION IS: ☒ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ............................................... ☐ SETTLE ORDER          ☐ SUBMIT ORDER
                                                                        ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 61
-------------------------------------------------------------------X
MARVIN LOVELL,

                    Plaintiff,

            -against-

CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC.,
                  Defendant.
-------------------------------------------------------------------X

DECISION AND
ORDER

Index No.
158889/12

HON. ANIL C. SINGH, J.:

    Defendant Consolidated Edison Company of New York, Inc. ("Con Ed")

moves to dismiss the complaint pursuant to CPLR 3211, contending that: a)

plaintiff is statutorily barred by his election of remedies from proceeding with the

instant employment discrimination action because he previously filed an

administrative complaint with the New York State Division of Human Rights; and

b) the instant complaint fails to state a cause of action for hostile work environment,

constructive discharge, and/or discriminatory denial of a promotion.  Plaintiff

opposes the motion.

    Plaintiff Marvin Lovell is a former employee of Con Ed.  He commenced the

instant plenary action pursuant to Article 15 of the Executive Law (State HRL) and

Article 1, Section 8 of the New York City Administrative Code, § 8-101, et seq.

(City HRL), alleging racial discrimination, hostile work environment and unlawful

policies and practices.

Plaintiff began working for Con Ed in April 2001 as a Customer Field Representative.  In September 2002, he took a military leave of absence and joined the U.S. Navy, from which he was honorably discharged in September 2007.

In October 2007, Lovell was rehired by Con Ed as a Customer Field Representative.  In August 2008, he was promoted to Customer Operations Supervisor, a position in which he managed approximately twenty (20) employees.

Lovell's direct supervisors were Ralph Pica and Paul Olmsted.  Joanna Wolff was General Manager of Field Operations South, and Marilyn Casselli was Senior Vice President for Customer Operations.  These individuals – all of whom are white – were in Mr. Lovell's chain of command.

Lovell received annual performance evaluations.  His 2010 evaluation, issued in 2011, stated that he had issues with his communication skills, although Mr. Lovell alleges that his supervisor, Ralph Pica, told him that he did not, in fact, have a communication problem and that "everybody is after me [Mr. Pica]" because "they think I am protecting you [Mr. Lovell]" (Complaint paragraphs 26, 28).  Mr. Lovell's March 2012 evaluation stated that he needed to improve his communication skills because his communication allegedly resulted in various complaints by Customer Field Representatives.  This evaluation stated that Lovell

should attend twelve weeks of leadership development courses. These courses would have been at his own expense.

In July 2011, Lovell applied for a position in management. He did not receive the position, nor did he receive an interview for it. The management position was conferred upon Ronald Howard. Both Howard and Lovell are African-American men.

Mr. Lovell attempted to complain about discrimination to Ms. Wolff. He also made a complaint to Con Ed's EEO specialist. Mr. Lovell complained to his supervisor Mr. Olmstead. He alleges that the response was to be asked if he wanted to resign. Mr. Lovell resigned in March 2012.

On March 20, 2012, Lovell commenced administrative proceedings before the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleged unlawful discriminatory practices relating to employment because of creed, and retaliation in violation of N.Y. Exec. Law, art. 15.

NYSDHR determined that plaintiff failed to demonstrate that Con Ed engaged in any unlawful discriminatory practices. Plaintiff was advised that he could appeal this determination in the Supreme Court. It is undisputed that plaintiff never filed such an appeal.

Discussion

Defendant contends that the election of remedies doctrine applies to this plenary action as plaintiff previously pursued an administrative resolution of his discrimination claims.

"[A]n aggrieved person cannot commence a civil action under the Human Rights Laws to redress unlawful discriminatory practices, after electing to pursue administrative remedies by filing an administrative complaint with the Division of Human Rights involving the same claim or grievance, whether with the State Division of Human Rights, or with a local human rights commission" (18A N.Y.Jur.2d Civil Rights section 208).

The second paragraph of plaintiff's complaint alleges that

> Mr. Lovell, a former Con Ed employee, seeks damages and other appropriate relief for violations of his statutory, civil and human rights ... under [the] State Human Rights Law....

(Complaint, p. 1, para. 2).

Likewise, paragraph 41 of the complaint alleges that

> On March 20, 2012, Mr. Lovell filed a complaint with the New York State Division of Human Rights....

(Complaint, p. 6, para. 41).

In short, it is clear to the Court that the instant plenary must be dismissed based upon plaintiff's election of remedies. "[W]here more than one procedural

remedy is available to redress a single alleged wrong, election of and full participation in one of those avenues of relief constitutes a waiver of the right to seek relief pursuant to those procedures which remain" (1 N.Y.Jur.2d Actions section 9).

Here, it is undisputed that plaintiff chose the Division of Human Rights as the forum to challenge defendant's alleged actions.  The Court notes that there is no allegation in the complaint that plaintiff was deprived of his right to participate fully in the administrative proceeding.

Plaintiff argues that the instant plenary action differs from the administrative proceeding before the NYSDHR because the instant complaint specifically pleads instances where Con Ed treated similarly situated employees differently than Lovell and that the NYSDHR did not consider these specific examples of discrimination. Plaintiff argues further that the complaint should not be dismissed because he was not represented by counsel when he filed his complaint with NYSDHR; that NYSDHR's determination does not set forth that he would lose his right to bring a suit in state court if he did not appeal; and that EEOC issued a notice of right to sue letter.

These arguments are without merit.  In his complaint, Lovell describes preferential treatment given to one other supervisor, Joseph Catalano, Jr.  The

complaint alleges that while Lovell supervised approximately twenty employees, Catalano supervised only two.  He alleges further that Catalano was allowed to spend more time in the office, and less in the field, and was not reprimanded for time in the office, as Lovell was.  Plaintiff also states that two other African-American coworkers received negative performance evaluations from Mr. Olmsted.

Despite this, the core complaints are the same as those addressed by the NYSDHR determination.  It is clear that the alleged discrimination at issue in this plenary action encompasses the same allegedly invidious behavior on the part of his employer over the same period of time that was considered by the NYSDHR.

For the above reasons, the Court finds that the complaint must be dismissed based upon the election of remedies.

Even if we were to assume for the sake of argument that the election of remedies doctrine did not apply, it is equally clear that the complaint fails to allege conduct sufficient to state a cause of action for hostile work environment, constructive discharge, or discriminatory denial of a promotion.

"An adverse employment action requires a materially adverse change in the terms and conditions of employment" (18 N.Y.Jur.2d Civil Rights section 42).  "A materially adverse change might be indicated by a termination of employment, demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities or other indices unique to a particular situation" (Id.; see, for example, Chin v. New York City Housing Authority, 106 A.D.3d 443 [1st Dept., 2013]).

Here, the complaint on its face does not allege that plaintiff was fired. On the contrary, it is undisputed that plaintiff resigned. The complaint alleges that plaintiff was treated differently than white supervisors; that he received a negative employment evaluation; and that he was denied a promotion. It is important to note, however, that the complaint does not allege that plaintiff's wage or salary was cut, nor does it allege that plaintiff was given a less distinguished title, any loss of benefits whatsoever, or diminished responsibilities.

Viewing the complaint's allegations in the light most favorable to plaintiff, the Court finds that the complaint fails to state a cause of action for hostile work environment, constructive discharge and/or discriminatory denial of a promotion.

For the above reasons, it is

ORDERED that the motion to dismiss the complaint is granted, with costs and disbursements to defendant as taxed by the Clerk of the court, and the Clerk is directed to enter judgment accordingly in favor of defendant.

The foregoing constitutes the decision and order of the court.

Date: 8/29/13
New York, New York

_____
Anil C. Singh

EXHIBIT D

FILED: NEW YORK COUNTY CLERK 10/03/2013

NYSCEF DOC. NO. 18

INDEX NO. 158889/2012

RECEIVED NYSCEF: 10/03/2013

[Print in *black* ink all areas in bold letters.  Attach a copy of the order/judgment.  Serve with a copy of this notice on all parties].

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------x

Marvin Lovell

[fill in name(s)]        Plaintiff(s)/Petitioner(s)

- against -

Consolidated Edison Company of New York, Inc.

[fill in name(s)]        Defendant(s)/Respondent(s)

------------------------------------------------x

**Index Number**

158889 - 2012

**NOTICE OF ENTRY**

PLEASE TAKE NOTICE that the attached is a true copy of an (order) judgment

[circle one] in this matter that was entered in the office of the Clerk of the Supreme Court, New York County, on the 3rd day of September, 2013. [fill in date of entry]

Dated: October 1, 2013
[date signed]

Marvin Lovell
[Plaintiff] Defendant
[sign your name and circle one]

MARVIN LOVELL
[print your name]
644 WESTMINSTER RD
BALDWIN, NY 11510
(516) 868-0672
[your address, telephone number]

To: [Name, address and telephone number for each attorney for a party
    or the self represented party in the case.]

MARVIN LOVELL
644 WESTMINSTER RD
BALDWIN, NY 11510
(516) 868-0672

NotEntry4-06

[Print in *black* ink all areas in bold letters.]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------x

*MARVIN LOVELL*,
**[fill in name(s)]**        Plaintiff(s)/Petitioner(s)

- against -

*CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.*
**[fill in name(s)]**        Defendant(s)/Respondent(s)
---------------------------------------------------x

Index Number

*158889 - 2012*

**NOTICE OF APPEAL**

HON. *ANIL C. SINGH*
**[name of assigned Justice]**

PLEASE TAKE NOTICE that the ~~plaintiff(s)~~ / defendant(s) **[circle one]** hereby appeal(s) to the Appellate Division , First Department, of the New York Supreme Court in and for the First Department from an ~~order~~ / judgment **[circle one]** entered in this case in the office of the Clerk of New York County on *SEPTEMBER 3rd, 2013* , **[fill in date of entry]**, which ~~order~~ / judgment **[circle one and describe the nature and effect of the order or judgment]** *DISMISSED THE COMPLAINT (GRANTED)*

and this appeal is taken from **[Specify below whether the appeal is taken from the entire order / judgment, or only portion of the order / judgment. Check box that applies.]**

☒ each and every part of that document as well as from the whole therefore;  or

☐ the portions of the document that **[if less than all of the order or judgment is being appealed from, identify the parts appealed from]** _____

Dated *October 1st*, 20*13*
**[date signed]**

Yours, etc.,

*Marvin Lovell*
~~Plaintiff~~ / Defendant
**[circle one and sign your name]**

*644 WESTMINSTER RD*
*BALDWIN, NY 11510*
*516-862-0672*

**[print  your name, address, telephone no.]**

4-06

To: Hon. Norman Goodman
     County Clerk, New York County

**[List name, address and telephone number for each attorney for a party
or the self represented party in the case]**

Attorney for  MARVIN LOVELL
                          [name of party]

MARVIN LOVELL
644 WESTMINSTER RD
BALDWIN, NY 11510
(516) 868-0672

Attorney for  CONSOLIDATED EDSON COMPANY OF NEW YORK, INC
                          [name of party]

BARBARA JANE CAREY
4 IRVING PLACE
ROOM 1800
NEW YORK, NY 10003

Attorney for _____
                          [name of party]

_____
_____
_____
_____

Attorney for _____
                          [name of party]

_____
_____
_____
_____

2

NotAppeal4-06

**Print in _black_ ink all the areas in bold letters.**

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, FIRST DEPARTMENT
-----------------------------------------------------------------x

MARVIN LOVELL

Plaintiff(s) / Petitioner(s)

[circle one - appellant or respondent]

- against -

CONSOLIDATED EDISON OF NEW YORK, INC

Defendant(s)/Respondent(s)

[circle one - appellant or respondent]
-----------------------------------------------------------------x

**Index Number**

158889 - 2012

CIVIL APPEAL
PRE ARGUMENT STATEMENT

1. **Title of action:** COMPLAINT AND JURY DEMAND

_____

_____

2. There has been no change in the title of the action except as follows: **[If there has been a change, set forth the full names of the original parties]:** _____

_____

_____

_____

3. **Individual name, law firm name, address, and telephone number of counsel for each appellant:**

MARVIN LOVELL
1044 WESTMINSTER RD
BALDWIN, NY 11510
(516) 863-0672

4. **Individual name, law firm name, address, and telephone number of counsel for each respondent:**

BARBARA JANE CAREY
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC
4 IRVING PLACE
ROOM 1800
NEW YORK, NY 10003

5. Court and County from which appeal is taken: Supreme Court, New York County.

4-06

6. Appeal is from an (Order) Judgment **[circle one]** entered on SEPTEMBER 3rd, 2013.
**[date of entry in County Clerk's Office]**

7. There is no related action or proceeding now pending in any court of this or any other jurisdiction except **[If there is any related court case, identify the related action or proceeding, the jurisdiction, and the status of the case.]** _____

_____

_____

_____

8. The nature and object of the cause(s) of action or the special proceeding **[briefly identify what type of claims were asserted in the case (for example, breach of contract, personal injury, reversal of agency order) and what type of relief was sought (for example, money damages, injunction, specific performance)]:** Compensatory damages, economic damages (back pay & compensation for lost benefits, plus pre judgment interest, damages (front pay) and such further relief as this Court deems just and proper

9. Result reached in the court or administrative body below: **[briefly describe the result of the order or judgment appealed from]:** Ordered that the motion to dismiss the Complaint is granted

_____

_____

_____

10. Grounds for seeking reversal, annulment, or modification **[briefly state the grounds of your appeal]:** An adverse employment action occured (13 N.J. JUR 2D CIVIL RIGHTS SECTION 42). HOSTILE WORK ENVIRONMENT, DISCRIMINATORY DENIAL OF PROMOTION.

THE ELECTION OF REMEDIES DOCTRINE DOES NOT APPLY.

2

11. There is no additional appeal in this action except **[If there is an additional appeal pending in the same case, so state and specify the date of entry of the order or judgment there appealed from and state that a copy of the notice of appeal and the preargument statement in that other appeal are attached, and attach copies]:** _____

_____

_____

_____

Dated: _OCTOBER 1st_, 20_13_
**[date signed]**

_Marvin Lovell_
Appellant **[sign name]**

_MARVIN LOVELL_
_044 WESTMINSTER RD_
_BALDWIN, NY 11570_
_516-868-0672_

**[print name, address, telephone number]**

**Attach copies of the Notice of Appeal, the Order / Judgment appealed from (including any opinion of the court below) and the Notice of Appeal and Pre argument statement in any pending appeal in this case.**

3                                                                                      PreArgue4-06