UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARVIN LOVELL,

                Plaintiff,

    -against-

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,

                Defendant.
------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 19 2016 ★

**BROOKLYN OFFICE**

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
14-CV-7592 (CBA)

**AMON, United States District Judge:**

    Plaintiff Marvin Lovell brings this action pro se against his former employer, Consolidated Edison Company of New York, Inc. ("Con Edison"). Lovell seeks relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq; New York State Executive Law § 296 ("New York State Human Rights Law" or "NYSHRL"); New York City Administrative Code § 8-107 et seq. ("New York City Human Rights Law" or "NYCHRL"); and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq. Lovell claims that Con Edison violated Title VII by discriminating and retaliating against him on the basis of race and subjecting him to a hostile work environment. Lovell also claims he was discriminated and retaliated against on the basis of his prior military service in violation of USERRA. Con Edison has moved to dismiss all of Lovell's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). For the reasons set forth below, the Court grants in part and denies in part Con Edison's motion.

## BACKGROUND

The following facts are drawn from the amended complaint, the documents attached thereto,[1] and the factual allegations in Lovell's memorandum in opposition to Con Edison's motion to dismiss.[2] They are assumed to be true for purposes of this motion.

### I.   Lovell's Employment at Con Edison

Lovell, an African American male, began working for Con Edison as a customer field representative on April 2, 2001.  (D.E. # 21 ("Pl. Mem.") at 6.)  On September 17, 2002, Lovell took a leave of absence and left Con Edison to enroll in the United States Navy.  (Id.)  Lovell was honorably discharged from the United States Navy on September 18, 2007, and was re-hired by Con Edison as a customer field representative in October 2007.  (Id.)  In August 2008, Lovell was promoted to customer operations supervisor, and in that position, he supervised and managed twenty employees.  (Id. at 7.)  Lovell was directly supervised by Ralph Pica and Paul Olmsted, both of whom are Caucasian males.  (Id.)  Joanna Wolff, the General Manager of Field Operations South, and Marilyn Caselli, the Senior Vice President for Customer Operations, are also Caucasian.  (Id.)

Lovell alleges he was subjected to discrimination on the basis of race because he was treated differently from similarly situated Caucasian employees.  (Id.)  First, Pica permitted Joseph

---

[1] Lovell's June 30, 2015, filing includes two documents entitled "Amended Complaint" and a number of other documents.  The Court will refer to the two documents in this filing entitled "Amended Complaint" collectively as Lovell's amended complaint.  (See D.E. # 6 ("Am Compl."))  The other documents attached to the June 30, 2015, filing include: Lovell's complaint to the New York State Division of Human Rights, (D.E. # 6, Ex. A at 2–10 ("NYSDHR Compl.")); his EEOC Right to Sue Letter, (D.E. # 6, Ex. A at 1 ("EEOC Letter")); his state court complaint, (D.E. # 6, Ex. B ("State Compl.")); and the state court's opinion in his lawsuit, (D.E. # 6, Ex. C at 9–15 ("Lovell I")).

[2] Lovell asserts a number of new factual allegations in his memorandum of law in opposition to Con Edison's motion to dismiss.  Because Lovell is a pro se litigant, the Court allows him some degree of flexibility in pleading his action and will "look to submissions beyond the complaint to determine what claims" he is presenting.  Boguslavsky v. Kaplan, 159 F.3d 715, 719 (2d Cir. 1998).  The Court will accordingly consider the factual allegations in Lovell's opposition for purposes of this motion.

Catalano, Jr., another customer operations supervisor, to work in the office, but Lovell was required to work "in the field" and was reprimanded for spending too much time on administrative work inside the office. (Id. at 7–8.) Furthermore, although Lovell was responsible for supervising twenty employees, Catalano only supervised two employees. (Id. at 8.)

Lovell also alleges he was discriminated against because of his military service. He claims that Wolff, Pica, and Olmsted "ostracized [him] by stating verbally that he . . . was in the military" and tasked him with more projects and assignments than other supervisors in the same position. (Id.) Lovell was frequently required to go to upstate New York to perform "storm duty," which involved driving around areas affected by storms to make reports and monitor downed power lines. (Id. at 8–9.) Storm duty was not rotated among the other supervisors, and Catalano bragged that he was rarely called for storm duty. (Id.)

## II.  Performance Evaluation

Lovell received annual performance evaluations, and the evaluation he received on March 16, 2012, stated that he needed to improve his communication skills because other customer field representatives had allegedly complained about this issue. (Id. at 9.) The evaluation also stated that Lovell should take a communication refresher course at his own expense. (Id.) Upon information and belief, Lovell alleges that two other African American employees also received negative performance evaluations at this time. (Id.)

When Lovell questioned Pica about the evaluation, Pica admitted that Lovell did not have a communication problem, but that Pica was forced to write the negative evaluation to "get Wolff, the Union and Caselli off [his] back" and that "everybody is after me because they think I am protecting you." (Id.)

3

### III.    Promotion Denial

In July 2011, Lovell applied to work as a manager under the supervision of Wolff. (Id.) Although Lovell's qualifications included five years of training as an aviation electrician in the Navy, leadership roles, and a bachelor's degree, he did not receive a telephone interview for the position. (Id. at 10.)  When Lovell asked Wolff why he did not receive an interview for the position, she responded that he was not "specific" in his application. (Id.)  Lovell contends, however, that in his application, he "set forth detailed reasons why [he] should be promoted to manager." (Id.)

The position was instead given to Ronald Howard, who "did not have electrical background experience" and did not meet the stated qualifications in the job posting. (Id.)  According to Lovell, "[i]t was known to me that they wanted to try to hide the fact that they discriminated against me by giving that position to another known veteran who could probably pass for African American, but is indeed a Hispanic Black American and have parents who are from one side Latin and the other side African American descent." (Id. at 10–11.)

### IV.    Resignation

Lovell claims that he attempted to make complaints about racial discrimination to Wolff, but she did not listen. (Id. at 11.)  When Lovell complained to Olmsted about his negative performance evaluation on March 16, 2012, Olmsted responded by asking if Lovell wanted to resign. (Id.)  Lovell contends that even though he was "under constant stress at work because [he] was continuously reprimanded for the way [he] treated [his] employees," he had not previously considered resigning from his position at Con Edison. (Id.)  However, based on Olmsted's comments, Lovell claims he believed he would have been terminated had he not resigned. (Id.) Lovell resigned shortly before the yearly bonus time in April 2012. (Id.)

4

## V.   Procedural History

On March 20, 2012, Lovell filed a complaint with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of religion and military status. (Id. at 12; NYSDHR Compl.)  The complaint alleged that he was subjected to a hostile work environment; given a negative performance evaluation on March 16, 2012; and was constructively discharged on the same day. (NYSDHR Compl.)  Lovell also claimed he was retaliated against for filing an internal complaint alleging discrimination based on military status.  (Id.)  The NYSDHR investigated Lovell's complaint and on July 20, 2012, issued its determination that there was no probable cause to believe that Con Edison had engaged in or was engaging in the unlawful discriminatory practice complained of. (D.E. # 16-1, Ex. A.)  The EEOC issued a Right to Sue letter that Lovell received on September 19, 2012.  (EEOC Letter.)

Lovell, who was represented by counsel at the time, then filed a lawsuit against Con Edison in the Supreme Court of the State of New York, County of New York.  (See State Compl.)  In that action, Lovell claimed he was discriminated against on the basis of race and subjected to a hostile work environment in violation of the NYSHRL and the NYCHRL.  (Id.)  To support these claims, he made allegations concerning the differential treatment of similarly situated white employees, (State Compl. ¶¶ 33–37); his performance evaluation, (id. ¶¶ 25–32); the July 2011 promotion denial, (id. ¶¶ 33–37); and the circumstances under which his employment ended, (id. ¶¶ 38–40). The state court dismissed Lovell's action on two grounds—(1) election of remedies, under New York law, and (2) failure to state a claim.  (See Lovell I at 4–7.)  In its ruling on the merits, the state court concluded that "the complaint fails to state a cause of action for hostile work environment, constructive discharge and/or discriminatory denial of a promotion." (Id. at 7.)

5

Lovell initiated this pro se action on December 31, 2014. (See D.E. # 1.)  He filed a motion for leave to proceed in forma pauperis, (see D.E. # 2), which this Court denied in a May 11, 2015, Memorandum and Order, (see D.E. # 4).  The Court granted leave for Lovell to pay the filing fee and pursue this action.  (See id. at 10.)  Lovell paid the filing fee, (see D.E. # 7), and filed an amended complaint on June 30, 2015, (see Am. Compl.; D.E. # 7.)

## STANDARD OF REVIEW

Rule 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  However, plaintiff must do more than allege facts that are "speculative" or "merely consistent" with a defendant's liability, Twombly, 550 U.S. at 555–57; he must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

While pro se plaintiffs must satisfy these pleading requirements, federal courts have an "obligation to construe pro se complaints liberally, even as [it] examine[s] such complaints for factual allegations sufficient to meet the plausibility requirement." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).  "It is well-established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted);

6

see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citations and internal quotation marks omitted)). Moreover, "courts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party." Boguslavsky v. Kaplan, 159 F.3d 715, 719 (2d Cir. 1998).

## DISCUSSION

### I.     Title VII Claims

Lovell brings three Title VII claims in the instant action: (1) discrimination, under a theory of disparate impact; (2) retaliation; and (3) hostile work environment.[3] The Court dismisses these claims because they are barred by the statute of limitations, administrative exhaustion, and res judicata.

#### A.  Statute of Limitations

Con Edison argues that Lovell's Title VII claims should be dismissed as untimely because he did not file his complaint within the statute of limitations. (D.E. # 16-4 ("Def. Mem.") at 7–10.) In order to successfully pursue a Title VII claim in federal court, a plaintiff must file her federal complaint within ninety days of receipt of her Right-to-Sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). Here, Lovell received his Right-to-Sue letter on September 19, 2012, (see EEOC Letter), but did not file suit in federal court until December 31, 2014, more than two years later, (see D.E. # 1).

---

[3] Lovell raises a hostile work environment claim for the first time in his memorandum in opposition to Con Edison's motion to dismiss. (Pl. Mem. at 12–13.) Although a plaintiff generally cannot raise new claims in his opposition papers that are not included in his complaint, see Lerner v. Forster, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003), "courts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party," Boguslavsky, 159 F.3d at 719. Thus, because Lovell is proceeding pro se, the Court reads his supporting papers liberally to raise a hostile work environment claim under Title VII.

Title VII's ninety-day statute of limitations is not jurisdictional and it is subject to equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982). However, equitable tolling is only appropriate "in [] rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks omitted), in which a party is "prevented in some extraordinary way from exercising his rights," Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996) (internal quotation marks and citation omitted). When determining whether equitable tolling is applicable, the Court must consider whether the person seeking application of the equitable tolling doctrine has "acted with reasonable diligence during the time period she seeks to have tolled," and has proven that the circumstances are so extraordinary that the doctrine should apply. Zerilli-Edelgass v. N.Y. City Transit Auth., 333 F.3d 74, 80–81 (2d Cir. 2003) (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)). In particular, the Second Circuit has held that equitable tolling is appropriate where the plaintiff: (1) "actively pursued judicial remedies but filed a defective pleading during the specified time period"; (2) "was unaware of his or her cause of action due to misleading conduct of the defendant"; or (3) suffered from a "medical condition or mental impairment [that] prevented her from proceeding in a timely fashion." Zerili-Edelglass, 333 F.3d at 80 (internal quotation marks omitted). The burden of proving that tolling is appropriate rests on the plaintiff. Id.

Here, Lovell has not alleged that he actively pursued judicial remedies but filed a defective pleading during the specified time period, nor does Lovell allege that he was unaware of his cause of action due to Con Edison's misleading conduct. Instead, he argues that equitable tolling is proper because his lawyer never mentioned the possibility of filing suit in federal court and he did not understand he would lose his right to bring suit in federal court. (Pl. Mem. at 3.) Lovell's argument fails, however, because attorney error does not provide a proper basis for equitable

8

tolling. See Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 96 (1990) (equitable tolling was not proper where plaintiff's attorney was out of the country and does not "extend to at best a garden variety claim of excusable neglect"); Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (per curiam) ("This Circuit, like her sisters, has found attorney error inadequate to create the 'extraordinary' circumstances equitable tolling requires."); Johnson v. St. Barnabas Nursing Home, 588 F. Supp. 2d 465, 469 (S.D.N.Y. 2008), aff'd on other grounds, 368 F. App'x 246 (2d Cir. 2010) (ninety-day filing period not tolled because attorney allegedly misplaced right to sue letter).

Lovell also argues that equitable tolling is proper because he experienced medical and financial hardship in the period after he received a Right-to-Sue letter from the EEOC. (Pl. Mem. at 3–4.) Whether equitable tolling is appropriate due to medical difficulties or other conditions depends on whether a plaintiff can show that the difficulty or condition "was so extraordinary that it functioned as a complete bar to the procedural steps required to file suit in a timely fashion throughout the entire time period in question." Kantor-Hopkins v. Cyberzone Health Club, No. 06-CV-643 (DLI) (LB), 2007 WL 2687665, at *7 (E.D.N.Y. Sept. 10, 2007); see also Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) ("Without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights," plaintiff's claim that she suffers from mental illnesses "is manifestly insufficient to justify any further inquiry into tolling."). Here, Lovell alleges various instances of medical and financial hardships, but offers no explanation of how these hardships caused him to delay bringing this lawsuit in federal court in a timely manner. Since equitable tolling is to be applied "sparingly," Nat'l R.F. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), and not out of "vague sympathy for particular litigants," Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984), Lovell's

conclusory claims of medical and financial problems are "manifestly insufficient to justify any further inquiry into tolling," Boos, 201 F.3d at 185.

In sum, Lovell did not timely file his complaint and is not entitled to equitable tolling of the ninety-day statutory deadline, so his Title VII discrimination claims must be dismissed as time-barred. See Johnson v. Al Tech Specialities Steel Corp., 731 F.3d 143, 146 (2d Cir. 1984) (without "a recognized equitable consideration, the court cannot extend the limitations period by even one day").

### B. Exhaustion of Administrative Remedies

Con Edison also contends that Lovell's Title VII claims are barred because he failed to exhaust administrative remedies. (Def. Mem. at 5–7.) Title VII requires that a claimant pursue administrative procedures before commencing a lawsuit. See 42 U.S.C. § 2000e-16. "Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme," and is consequently a "precondition to bringing such claims in federal court." Legnani v. Alitalia Linee Seree Italiane, S.P.A., 274 F.3d 683, 686 (2d. Cir. 2001).

Although there is a requirement that a Title VII claim first be presented to the EEOC, the Second Circuit has recognized that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with" the EEOC. Id. at 686 (quoting Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 614 (2d Cir. 1999)). There are three situations in which claims not alleged in an EEOC charge are "reasonably related" to the allegations in the charge: (1) the allegedly discriminatory conduct "would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; (2) the claim is one of "retaliation by an employer against an employee for filing an EEOC charge"; and (3) the plaintiff "alleges further incidents of discrimination carried

10

out in precisely the same manner alleged in the EEOC charge." Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2008) (quoting Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402–03 (2d Cir. 1993)). In determining whether the plaintiff's claims are reasonably related to the allegations made in the EEOC charge, "[t]he central question is whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination" on the basis that the plaintiff raises in her present suit. Mathirampuzha v. Potter, 548 F.3d 70, 77 (2d Cir. 2008). This analysis is "intimately connected to the facts asserted in the EEOC complaint" and does not depend on the boxes checked or labels applied by the plaintiff. Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 71 (2d Cir. 2006).

Lovell's Title VII claims in the instant action are wholly different from those in his EEOC complaint. In his EEOC complaint, Lovell only alleged discrimination on the basis of religion and military status, (see NYSDHR Compl.), but he now raises claims of discrimination, hostile work environment, and retaliation claims, (see Am. Compl.at 4; Pl. Mem. at 12–13). A claim that is included in a complaint in federal court, but that was not included in an EEOC charge, "will not be deemed 'reasonably related' where the claim is based on 'a wholly different type of discrimination' from that alleged in the EEOC complaint . . . ." Foxworth v. Am. Bible Soc., No. 03-CV-3005, 2005 WL 1837504, at *10–11 (S.D.N.Y. July 28, 2005), aff'd sub nom., 180 F. App'x 294 (2d Cir. 2006). Here, because Lovell's EEOC charge did not even mention race, which is the basis of all of his Title VII claims, the claims cannot be considered reasonably related. See Clarke v. White Plains Hosp., -- F. App'x --, 2016 WL 3007172, at *1 (2d Cir. May 25, 2016) (plaintiff's Title VII claims were not "reasonably related" to the alleged discrimination in her NYSDHR and EEOC complaints because "it did not even mention" plaintiff's race or national origin); see also Muhammad v. N.Y. City Transit. Auth., 450 F. Supp. 2d 198, 205–06 (E.D.N.Y.

11

2006) (concluding that plaintiff's racial discrimination claim in federal court was not reasonably related to the EEOC charge that "make[s] no reference whatsoever to race."). Lovell has thus failed to exhaust administrative remedies with regards to his Title VII claims, so the Court dismisses these claims.

### C. Res Judicata

Con Edison moves to dismiss Lovell's Title VII claims as barred by the doctrine of res judicata. (Def. Mem. at 11–12.) "Res judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Thompson v. Cty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994). When a defendant raises res judicata as a defense and "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law," dismissal under Rule 12(b)(6) is appropriate. Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000).

Under the doctrine of res judicata, a plaintiff's claims are barred as a matter of law by a previous action where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (internal quotation marks and citations omitted). Here, Lovell previously filed a lawsuit in New York state court, which was adjudicated on the merits. (See Lovell I at 6–7.) It is well-settled that "a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. N.Y. City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Therefore, to determine the preclusive effect of the state court actions in this case, the Court must determine what preclusive effect a New York state court would give [the plaintiff's] previous action.

12

Under New York law, "the doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action." Duane Reade, Inc. v. St. Paul Fire & Marine Ins., Co., 600 F.3d 190, 195 (2d Cir. 2010) (internal citations and alterations omitted). New York law dictates that in deciding whether a claim is one that was or could have been raised in a prior action, the question is whether the claim "aris[es] out of the same transaction or series of transactions" involved in the prior action. McKithen v. Brown, 481 F.3d at 104 (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (1981)).

As long as a claim separately asserted in a different proceeding is grounded on the same "factual grouping," it is deemed part of the same cause of action and thus precluded "without regard to whether it is based upon different legal theories or seeks different or additional relief." Davidson v. Capuano, 792 F.2d 275, 285 (2d Cir. 1986) (citing Smith v. Russell Sage College, 54 N.Y.2d 185, 192–93 (1981)). Indeed, a party may not escape the effects of res judicata by "'splitting' his claim into various suits, based on different legal theories," Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 110 (2d Cir. 2000). See also Yoon v. Fordham Univ. Faculty & Admin. Retirement Plan, 263 F.3d 196, 200 (2d Cir. 2001) ("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (1981))).

Here, Lovell's amended complaint is virtually identical to, and is predicated on largely the same facts as, his complaint in state court, which was dismissed on the merits. (See Lovell I, at 6–7.) In both actions, Lovell makes nearly identical allegations concerning the demographics of Con Edison's supervisors, (see Pl. Mem. at 7; State Compl. ¶¶ 15–18); disparate treatment,

(compare Pl. Mem. at 7–9, with State Compl. ¶¶ 19–24); the July 2011 promotion denial, (compare Pl. Mem. at 9–11, with State Compl. ¶¶ 33–37); his performance evaluation, (compare Pl. Mem. at 9, with State Compl. ¶¶ 25–32); and the circumstances under which his employment ended, (compare Pl. Mem. at 11, with State Compl. ¶¶ 38–40). Lovell did raise different legal theories in state court than in the instant action: he brought discrimination and hostile work environment claims under NYSHRL and NYCHRL in state court, but he raises Title VII discrimination, hostile work environment, and retaliation claims in the present action. However, this distinction is not material. The focus of the res judicata inquiry is on whether Lovell's claims in the instant action arose "out of the same transaction or series of transactions" as his state court action, Yoon, 263 F.3d at 200, not the legal theory Lovell raised in each action, see Saud v. Bank of N.Y., 929 F.2d 916, 919 (2d Cir. 1991) ("[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action [for res judicata purposes], not the legal theory upon which a litigant relies."). In light of the same factual bases underlying Lovell's Title VII claims and the claims in his state court complaint, the Court concludes that all of Lovell's claims arise from the same series of transactions. Because the state court already addressed these claims on the merits, res judicata bars him from re-litigating these claims in federal court.

On the three grounds described above—statute of limitations, failure to exhaust administrative remedies, and res judicata—the Court dismisses Lovell's Title VII claims.

## II.   NYSHRL and NYCHRL Claims

In his amended complaint, Lovell references the NYSHRL and NYCHRL as a basis of this Court's jurisdiction. (Am. Compl. at 1.) Although Lovell does not provide any factual allegations to explicitly support these claims, the Court construes his pro se complaint liberally to state claims of discrimination, hostile work environment, and retaliation on the basis of race under the

NYSHRL and NYCHRL. See Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (recognizing that courts have the "obligation to construe pro se complaints liberally").

However, as with his Title VII claims, Lovell's NYSHRL and NYCHRL claims are barred by res judicata. Lovell has already litigated racial discrimination and hostile work environment claims under the NYSHRL and NYCHRL in his state court action. (See State Compl.) Furthermore, as discussed above, Lovell's claims in state court were based on largely the same factual allegations as those underlying the discrimination, retaliation, and hostile work environment claims in the present action. Because the state court already adjudicated these claims on the merits, res judicata prohibits Lovell from relitigating these claims in federal court. See Duane Reade, Inc., 600 F.3d at 195 (a final judgment on the merits of an action "precludes the parties from relitigating issues that were or could have been raised in that action" (internal citations and alterations omitted)). The Court accordingly dismisses Lovell's NYSHRL and NYCHRL claims.[4]

## III. USERRA Claims

Lovell also asserts Con Edison discriminated and retaliated against him on the basis of his military status in violation of the USERRA.[5] USERRA prohibits employment discrimination against individuals based upon their service in the uniformed services. 38 U.S.C. §§ 4301–4335. It forbids an employer from denying "employment, reemployment, retention in employment, promotion, or any benefit of employment" based on a person's "membership" in or "obligation to

---

[4] Con Edison also moves to dismiss Lovell's NYSHRL and NYCHRL claims under the election of remedies doctrine, (Def. Mem. at 16–17), but because the Court dismisses these claims under res judicata, it need not reach the election-of-remedies issue.

[5] Lovell raised his USERRA claims for the first time in his memorandum in opposition to Con Edison's motion to dismiss. (Pl. Mem. at 13–15.) Although a plaintiff generally cannot raise new claims in his opposition papers that are not included in his complaint, see Lerner, 240 F. Supp. 2d at 241, "courts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party," Boguslavsky, 159 F.3d at 719. Thus, because Lovell is proceeding pro se, the Court reads his supporting papers liberally to raise discrimination, retaliation, and hostile work environment claims under the USERRA.

perform in a uniformed service," id. § 4311(a), and provides that liability is established "if the person's membership . . . is a motivating factor in the employer's actions," id. § 4311(c). Lovell claims he was both discriminated against and retaliated against in violation of the USERRA. (Pl. Mem. at 13–15.)

Con Edison moves to dismiss Lovell's USERRA claims on two grounds: (1) the claim is barred by the doctrine of res judicata; and (2) Lovell failed to state a claim under the USERRA.

### A. Res Judicata

Con Edison first contends that Lovell's USERRA claims are barred by res judicata because he could have raised these claims in his state court action and the state court's opinion in that case precludes him from bringing employment discrimination and retaliation claims in federal court under a different legal theory. (D.E. # 16-6 ("Def. Reply Mem.") at 7.) Although Lovell raised different legal claims in his two lawsuits—he brought NYSHRL and NYCHRL claims on the basis of race in his state court lawsuit and alleges discrimination and retaliation on the basis of his prior military service in the instant action—this is not the focus of the res judicata analysis. For purposes of res judicata, it is "the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." Saud, 929 F.2d at 919; see also Woods v. Dunlop Tire Corp., 972 F.2d 36, 39 (2d Cir. 1992) (the claim or cause of action is composed of the "identity of facts surrounding the occurrence," and not the legal theory used to frame a complaint). As a result, res judicata will only bar Lovell's USERRA claims in the instant action if they arise from the same "transaction or series of transactions." Yoon, 263 F.3d at 200.

Here, Con Edison wrongly assumes that simply because Lovell restates many of the facts alleged in the prior litigation, his USERRA claims here necessarily arise from the same transaction or claim. Con Edison maintains that because the state court already considered Lovell's allegations

16

of constructive discharge and discriminatory denial of a promotion, he cannot bring employment discrimination or retaliation claims in federal court under a different legal theory. (Def. Reply Mem. at 7.) This recitation, however, describes the facts asserted too summarily and ignores some of Lovell's factual allegations that are relevant to his USERRA claims. Moreover, ultimately, "[t]he fact that several operative facts may be common to successive actions between the same parties does not mean that a judgment in the first will always preclude litigation of the second." Tucker v. Arthur Andersen & Co., 646 F.2d 721, 727 (2d Cir. 1981).

Although there is significant factual overlap between Lovell's first and second actions, the instant case plainly alleges at least one instance of discrimination on the basis of Lovell's military service that was not included in Lovell's state court action. Lovell alleges that Wolff, Pica, and Olmsted assigned him more projects and assignments to complete as compared to other supervisors in the same position because he had served in the military. (Pl. Mem. at 8.) Lovell's claim under USERRA arises from this allegation, and it was not included in his state court complaint. The complaint in the instant action thus does not merely assert new legal theories, but presents claims that necessarily require consideration of facts beyond those that formed the basis of the state court's decision. As a result, res judicata does not bar Lovell's USERRA claims in the instant action.

## B. Sufficiency of the Pleadings

For Lovell's USERRA discrimination claim to survive a motion to dismiss, he must allege sufficient facts to establish "a prima facie case of discrimination by showing . . . that his protected status was a 'substantial or motivating factor in the adverse [employment] action.'" Gummo v. Vill. of Depew, 75 F.3d 98, 106 (2d Cir. 1996) (quoting NLRB v. Transp. Mgmt. Corp., 462 U.S. 393, 401 (1983)). "Military status is a motivating factor if the defendant relied on, took into

17

account, considered, or conditioned its decision on that consideration." Woodard v. N.Y. Health & Hosps. Corp., 554 F. Supp. 2d 329, 348 (E.D.N.Y. 2008) (internal quotation marks omitted), aff'd in part and remanded in part, 350 F. App'x 586 (2d Cir. 2009). "Discriminatory motivation may be proven through direct or circumstantial evidence, including . . . an employer's expressed hostility towards members protected by statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." Id. at 348–49 (quoting Sheehan v. Dep't of Navy, 240 F.3d 1009, 1012–13 (Fed. Cir. 2001)).

Here, Lovell has pleaded sufficient facts to infer discriminatory motivation. Lovell alleges that Wolff, Pica, and Olmsted "ostracized [him] by stating verbally that he (Mr. Lovell) was in the military and would task (him) with more work than other supervisors in the same role." (Pl. Mem. at 8.) In light of the Court's obligation to construe pro se pleadings liberally to raise the strongest arguments that they suggest, see Triestman, 470 F.3d at 474, the Court interprets Lovell's pleading as an allegation that Wolff, Pica, and Olmsted stated they were assigning him more work because of his prior military service. The Second Circuit has recognized that increasing an employee's workload may be an adverse action for the purposes of USERRA if the increase is heavily disproportionate to those similarly situated. See Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997); see also Rivers v. N.Y. City Hous. Auth., No. 11-CV-5065 (KAM) (MDG), 2016 WL 1305161, at *19 (E.D.N.Y. Mar. 31, 2016) ("Heavier workloads or more physically demanding tasks can constitute adverse employment actions."). Lovell has thus alleged that his membership in the United States Navy was a substantial or motivating factor in an adverse employment action and has consequently carried his burden of stating a prima facie case of discrimination under the

18

USERRA. The Court accordingly denies Con Edison's motion to dismiss Lovell's discrimination claim under USERRA.

With regards to Lovell's retaliation claim, "[i]n order to make out a prima facie case of retaliation under USERRA, 'a plaintiff must show that (1) he was engaged in protected activity; (2) that the employer was aware of that activity; (3) that the plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action.'" Lapaix v. City of New York, No. 13-CV-7306 (LGS), 2014 WL 3950905, at *6 (S.D.N.Y. Aug. 12, 2014) (quoting Fink v. City of New York, 129 F. Supp. 2d 511, 517 (E.D.N.Y. 2001)). "The term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) (internal quotation marks omitted). Here, Lovell engaged in protected activity by filing a complaint with the NYSHDR alleging discrimination on the basis of his military service. However, Lovell has failed to include any factual allegations indicating that there was a causal connection between this protected activity and an adverse action. In its May 11, 2015, Memorandum and Order, this Court advised Lovell that his original complaint failed to state a retaliation claim under USERRA, (see D.E. # 4 at 8), yet Lovell's subsequent submissions to the Court have not included any additional supporting factual allegations. As a result, the Court dismisses Lovell's retaliation claim under USERRA for failure to state a claim.

## CONCLUSION

For these reasons, the Court grants Con Edison's motion to dismiss Lovell's Title VII claims and his retaliation claim under USERRA, but denies the motion with respect to his USERRA discrimination claim.

SO ORDERED.

Dated: September 10 , 2016
Brooklyn, New York

Carol Bagley Amon
United States District Judge

20